**UNITED STATES of America,**
**Appellant,**

**v.**

**Lucille B. WOODBURY, Executrix of the Estate of Ray B. Woodbury, deceased,**
**Appellee.**

**Lucille B. WOODBURY, Executrix of the Estate of Ray B. Woodbury, deceased,**
**Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**UNITED STATES of America,**
**Appellant,**

**v.**

**Ray B. WOODBURY, Aleutian Homes and Kodiak Construction Company,**
**Appellee.**

**Nos. 19767, 19768.**

United States Court of Appeals
Ninth Circuit.

March 11, 1966.

372

Sidney I. Lezak, U. S. Atty., Roger G. Rose, Jack G. Collins, Asst. U. S. Attys., Portland, Or., for appellant.

Norman J. Wiener, of King, Miller, Anderson, Nash & Yerke, Portland, Or., for appellees.

Before JERTBERG, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

In these cases there are four appeals and two motions before us. This is the second appeal in the action that is now our No. 19,767. It began on September 30, 1957 as an action filed by Ray B. Woodbury against the United States under the Federal Tort Claims Act in the United States District Court for the District of Oregon. On June 2, 1958, the United States filed a counterclaim for breach of contract (guaranty). On April 20, 1959, the United States filed in the same court a separate action against Woodbury, Aleutian Homes, Inc. (Aleutian), Kodiak Construction Co. (Kodiak), Donald M. Lehman and Alex B. Carlton under the False Claims Act (31 U.S.C. §§ 231–33). This is now our No. 19,768. On October 19, 1959, the court dismissed No. 19,768 as against Woodbury, "without prejudice," on the ground that the claims asserted against him were compulsory counterclaims in No. 19,767 under Rule 13(a), F.R.Civ.P. On October 2, 1959, the United States had filed in both actions a motion to consolidate them, and, in No. 19,767, a motion to amend its counterclaim to state the same claims as were alleged in No. 19,768. This was after the court had indicated its view that the claims fell within Rule 13(a) but before the dismissal of Woodbury in No. 19,768. On October 19, 1959, the court granted leave to amend.[1] The amended counterclaim was filed on October 23, 1959. The court took no action on the motion to consolidate.

In No. 19,767, following the entry of a very elaborate pre-trial order and upon motion of the United States, the Court entered a judgment dismissing all of Woodbury's claims for want of jurisdiction. See Woodbury v. United States, D. Ore., 1961, 192 F.Supp. 924. We affirmed on appeal, Woodbury v. United States, 9 Cir.1963, 313 F.2d 291. This left pending in No. 19,767 only the counterclaims of the United States.

On April 13, 1961, the United States again moved that its counterclaims in No. 19,767 be consolidated with No. 19,768. The motion was denied. Next, the United States moved to vacate the order of dismissal as to Woodbury in No. 19,768. This was also denied. Nothing more happened until 1963, when the United States moved to dismiss its counterclaim for breach of contract and this motion was granted on April 26, 1963. Thus all that remained in either case were the claims of the United States under the False Claim Act—against Woodbury in No. 19,767 and against other defendants in No. 19,768. On the same day the court consolidated the two actions for trial. Before the cases were tried, the United States settled its claims against Carlton and Lehman in No. 19,768 and the action was dismissed as to them.

The defendants Aleutian and Kodiak defaulted. A trial followed, and on May 28, 1964, the court filed, in lieu of formal findings, a Supplemental Opinion in which it concluded that judgment should go in favor of Woodbury in No. 19,767. It also decided that, while the government had not proved actual damages, it was entitled to judgment in No. 19,768 against Aleutian and Kodiak for a total of $20,000, based upon its finding that each had

1. The minute order of October 19 reads: "Entered ord allowing deft. to file a counterclaim which will relate back to original pleadings so as to come within Statute of Frauds."

A signed order dated October 19 but not filed until October 22, grants leave to amend but omits the language as to relation back.

filed ten false claims. Woodbury v. United States, D. Oregon, 1964, 232 F.Supp. 49.

Judgment was entered in favor of Woodbury in No. 19,767 and the United States appealed. Woodbury filed a cross-appeal "from the findings of the District Court that plaintiff made false claims to the government within the meaning of the False Claims Act." Woodbury died on September 6, 1964. His widow, as his executrix, moved in the trial court that she be substituted as plaintiff. This motion was granted by the trial court on November 6, 1964. She then moved to dismiss the counterclaims on the ground that the action had abated. This was denied "without prejudice," because the court believed that this court had jurisdiction.

Brief findings of fact and a judgment against Aleutian and Kodiak were filed in No. 19,768. The United States appealed. Two weeks later, the United States moved for "clarification" on the ground that the judgment made no disposition of the case as against Woodbury, the earlier dismissal having been without prejudice. The motion was denied and the United States appealed from the order of denial. Next, the United States moved to substitute the executrix as a party defendant. The motion was denied without prejudice, again because the court believed that jurisdiction was lodged in the Court of Appeals.

Here, the United States moved that the executrix be substituted as an appellee in each action. The executrix opposed the motion to substitute in No. 19,768 on the ground that Woodbury was not a party to that action. In No. 19,767 she did not oppose substitution, which we granted, but did move to dismiss the appeal on the ground that the claims of the United States had abated. We deferred action on the motion to substitute in No. 19,768 and the motion to dismiss in No. 19,767 until the hearing on the merits.[2]

1. *Abatement—the motion to dismiss in No. 19,767.*

 The statute upon which the claims of the United States rest is set out, in pertinent part, in the margin.[3] It provides that the guilty party "shall forfeit and pay * * * the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * * and such forfeiture and damages shall be sued for in the same suit." It is arguable that as to the $2,000 forfeiture the action abates upon the defendant's death, but that as to the damages it does not. But we think that decisions of the Supreme Court require us to hold that the action does not abate, even as to the forfeiture.[4]

The leading case is United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. There the Court held that a defendant who had been convicted and fined under then 18

---

**2.** Our order recites that there is also a motion by the executrix to dismiss in No. 19,768. There is no such motion.

**3.** 31 U.S.C. § 231:
"Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher,

roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

**4.** Because we reach this conclusion, we need not decide whether the fact that Woodbury did not die until after the appeal was taken should make any difference.

U.S.C. §§ 80, 83 for making false claims was not subjected to double jeopardy when sued under the False Claim Act. The government's recovery was $203,000 as double damages and $112,000 in forfeitures for making 56 false claims. In so deciding, the Court said:

"It is enough for present purposes if we conclude that the instant proceedings are remedial and impose a civil sanction. The statutes on which this suit rests make elaborate provision both for a criminal punishment and a civil remedy. Violators of § 5438 may 'be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars.' We cannot say that the remedy now before us requiring payment of a lump sum and double damages will do more than afford the government complete indemnity for the injuries done it. Helvering v. Mitchell, supra, [303 U.S. 391] 401 [58 S.Ct. 630, 82 L.Ed. 917].
* * *

"It is argued that the $2,000 'forfeit and pay' provision is 'criminal' rather than 'civil' even if the double damage feature is not. The words 'forfeit and pay' relate alike to the $2,000 sum and the double damages. The use of the word 'forfeit' in conjunction with the word 'pay' does not force the conclusion that the provision is criminal. No one doubts that Congress could have accomplished the same result by authorizing 'double' or 'quadruple' or 'punitive' damages or a lump sum payment for attorney's fees, or by definition of the elements of 'actual damages.' Special consequences cannot be drawn from the use of the word 'forfeit'. While this might under other circumstances be an appropriate word to suggest a fine upon the failure to pay which an individual might be imprisoned, no such punishment is provided here upon default in payment. The words 'forfeit and pay' are wholly consistent with a civil action for damages. Atchison, T. & S. F. Ry. Co. v. Nichols, 264 U.S. 348, 350–352 [44 S. Ct. 353, 354, 68 L.Ed. 720]; cf. Hepner v. United States, 213 U.S. 103, 104–111 [29 S.Ct. 474, 475, 478, 53 L.Ed. 720]." (317 U.S. at 549, 551, 63 S.Ct. at 387)

The case is not squarely in point, but it has proved persuasive. It was followed in Rex Trailer Co., Inc. v. United States, 1956, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149, a case in which no actual damages were proved and the recovery was limited to five $2,000 forfeitures. In Rex Trailer Co. a different statute, the Surplus Property Act, 50 U.S.C.App. 1635 (1946), now 40 U.S.C. § 489, was involved, but its provisions are comparable.

*Rex Trailer Co.* was the basis for a per curiam affirmance in Koller v. United States, 1959, 359 U.S. 309, 79 S.Ct. 755, 3 L.Ed.2d 828, a case involving the same statute as *Rex Trailer Co.* The question there was whether the action was one for "any civil fine, penalty, or forfeiture" within the meaning of the five year statute of limitations, 28 U.S.C. § 2462. The Court of Appeals for the Third Circuit held that it was not (United States v. Doman, 1958, 255 F.2d 865) and the decision was affirmed in *Koller.* If the action is not one for a fine, penalty or forfeiture for purposes of the statute of limitations, how can it be for abatement purposes?

Other circuits have concluded, relying on the foregoing cases and on 28 U.S.C. § 2404,[5] that such an action as this does not abate. United States v. Posner, 3 Cir., 1959, 269 F.2d 742 (damages only); United States v. Grannis, 4 Cir., 1949, 172 F.2d 507 (both "forfeiture" and "damages"). United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 1942, 131 F.2d 545, on which the executrix relies, is directly contrary to United States ex rel. Marcus v. Hess, supra. Indeed, it relies on the decision which was reversed in that case.

5. "A civil action for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants."

We hold that there has been no abatement and that the motion to dismiss in No. 19,767 should be denied.

2. *The statute of limitations.*

The government pleaded a total of 11 instances in which applications for funds were presented to the government, the first on June 22, 1953 and the last on October 26, 1953. Woodbury asserted, and the court held, that all but the last were barred by the special statute of limitations applicable to suits under the False Claim Act. That statute, 31 U.S.C. § 235, reads:

"Every such suit shall be commenced within six years from the commission of the act, and not afterward."

The government filed its action against Woodbury on April 29, 1959 (our No. 19,768). This was the commencement of a suit (Rule 3, F.R.Civ.P.) and the date of commencement was within six years of the making of each of the alleged false claims. Nevertheless, the court held that action upon all of the claims, except the last, is barred. Its reasoning is that No. 19,768 was improperly brought because the government's claims should have been asserted as compulsory counterclaims in the already pending action, our No. 19,767, brought by Woodbury against the United States, and that such a counterclaim was not filed until October 23, 1959, a date too late to avoid the bar of the statute. We have already noted that a motion for leave to file a counterclaim in No. 19,767 was made on October 2, 1959, more than two weeks before the court dismissed No. 19,768 as against Woodbury. Leave was granted on the same date (October 19) as the dismissal and the counterclaim was filed only four days later. The government moved as promptly as could reasonably be expected after it learned the court's views. It found itself in this position because the court put it there, not because it asked to be there.

 We hold that the court erred. The mere fact that the attorneys for the government may have been mistaken in their view as to whether its claims were compulsory counterclaims (a question on which we express no opinion) and so filed a separate suit, should not deprive the government of its rights, at least absent some showing of prejudice to Woodbury. And here no possible prejudice appears. The court relied primarily on the doctrine that because the limitation was originally a part of the False Claim Act, it bars not only the remedy but also the right, and cannot be tolled. This notion, however, has been more than once rejected by the Supreme Court. (Glus v. Brooklyn E. Dist. Terminal, 1959, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770; Burnett v. New York Cent. R. R. Co., 1965, 380 U.S. 424, 85 S.Ct. 1050, 13 L. Ed.2d 941; cf. Herb v. Pitcairn, 1945, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483.) The *Burnett* case is closely in point, and, we think, requires a holding that the statute of limitations does not bar any claims here. See also United States for Use of E. E. Black Ltd. v. Price-McNemar Constr. Co., 9 Cir., 1963, 320 F.2d 663.

 The court also based its decision on the view that the order dismissing No. 19,768 as against Woodbury, without prejudice, was appealable. No appeal having been taken, the court apparently felt that the order was final and so disposed of No. 19,768 as tolling the running of the statute of limitations. The conclusion does not follow from the premise. It is the commencement of the action that tolls the statute and its disposition, at least under circumstances comparable to those present here, is not controlling. Moreover, the order dismissing as to Woodbury was not appealable, no determination and direction having been made under Rule 54(b), F.R. Civ.P. (Richardson v. United States, 9 Cir., 1964, 336 F.2d 265.)

The only defense asserted by Woodbury in No. 19,767 that would not also have been available to him in No. 19,768 was the statute of limitations. Because we hold that that defense is not good in No. 19,767, there is no reason to consider further the appeals of the United States in No. 19,768, insofar as they relate to the dismissal of the action as

against Woodbury or to the motion to substitute the executrix as appellee in that case. The claims against Woodbury were fully tried and can be fully determined here, in No. 19,767. The United States, if entitled to judgment, is entitled to only one judgment, not two.

### 3. *Compromise, Waiver and Estoppel.*

The court found that the government's claims had been compromised, that it had waived them, and that it was estopped to assert them. Consideration of these defenses requires some further reference to the facts. The background of the litigation is set forth in our opinion in Woodbury v. United States, supra, 1963, 313 F.2d 291, and, in more detail, in the first opinion of the trial court in the case, reported at 192 F.Supp. 924. We do not repeat them here.

#### a. *Compromise.*

In the decision from which the present appeals were taken, the trial court held that the government became a party to the "Completion Agreement." In its supplemental opinion, the court says:

"After the construction on the Aleutian Homes Project came to a stop in the fall of 1953, the Government, and the various bonding companies made a complete investigation of all of the facts surrounding the project, including, but not limited to, all of the facts and circumstances surrounding the making and filing of the applications on which the Government now charges fraud. Subsequent thereto and on April 23, 1954, all interested parties, with the exception of the Government, signed what is known to the record as a Completion Agreement. In my original opinion, Woodbury v. United States, supra, I held that the Government was a party to that agreement even though the instrument was not formally signed by it. I held that contractual liability under a written contract might be assumed without a formal execution. My comments with reference to that transaction, as expressed in that opinion, are by reference made a part of my findings in this

cause. I again find that the Government was a party to said agreement and was bound by the terms and conditions thereof. The Courts, in particular, and society, in general, favor the compromise and settlement of claims with the view of preventing protracted and highly expensive litigation. It is my view that the parties, by said agreement, intended to compromise and settle all controversies, such as the claims here in question."

The government says that the court had no jurisdiction to decide whether it became a party to the Completion Agreement. It relies on our holding on the prior appeal that the court was without jurisdiction because Woodbury's claim was "essentially for breach of a contractual undertaking," and that jurisdiction was in the Court of Claims. We think that this does mean that the finding that the court then made, that the government became a party to the Completion Agreement, is *coram non judice.* But that does not solve our present problem, which is whether, in defense against claims by the United States of which the court did have jurisdiction, Woodbury could rely on the Completion Agreement as a compromise of those claims.

The jurisdiction of the District Court to entertain the contention is at least doubtful. (Cf. Nassau Smelting & Ref. Works, Ltd. v. United States, 1924, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; United States v. Skinner & Eddy Corp., 9 Cir., 1929, 35 F.2d 889, 897–901). It is also doubtful that HHFA or any of its officials had any authority to compromise these claims in any event. (Cf. United States v. National Wholesalers, 9 Cir., 1956, 236 F.2d 944, 949–950; United States v. United States Cartridge Co., E. D.Mo., 1948, 78 F.Supp. 81; see also United States v. Fox Lake State Bank, N.D.Ill., 1963, 225 F.Supp. 723; United States v. Williams, N.D.Ala., 1957, 162 F.Supp. 903, 31 U.S.C. §§ 231, 232). But we need not pass upon these questions because we are of the opinion that the court's finding that the Completion

Agreement was a compromise of the claims here in suit is clearly erroneous.

■ For the purpose of this discussion only, we assume that the finding that the government, through the Housing and Home Finance Administration, became a party to the Completion Agreement is correct. But we cannot find in the Completion Agreement or the circumstances surrounding its execution any indication that the present claims were compromised or settled. It is quite true that they arose out of certain things that Woodbury did in connection with the project to which the Completion Agreement relates. But their legal basis is not breach of contract or any of the matters to which the Completion Agreement relates. Their legal basis is an intentional violation of the False Claims Act. They are in addition to, and separate from, any claims that the government might have for breach of contract.

The Completion Agreement may or may not be a compromise of whatever breach of contract claims HHFA may otherwise have had against Woodbury and his corporations. That question is not before us, nor was it before the District Court. The Completion Agreement may or may not bind HHFA in such a way as to subject the government to liability to Woodbury for breach of contract. That is not a question of which the District Court, or this court, has jurisdiction. But assuming that the Completion Agreement was and was intended as a compromise, its whole thrust is at the pre-existing contracts relating to the Kodiak project, the liens and claims of certain creditors, and the obtaining of needed financing. Nowhere in it (it is set out in full in 192 F.Supp. at pp. 939–942) is there any language that can be construed as compromising or settling or releasing the claims under the False Claims Act. Appellee has not called to our attention any other evidence that anyone intended that the agreement was to be a compromise of these claims. We can find none.

b. *Waiver and estoppel.*

■ For substantially the same reasons, we can find no waiver and no estoppel. This is because we find nothing in the record indicating that the government intended to waive its claims, or that anything Woodbury did was done under a misapprehension that the government had waived the claims. Appellees point to nothing that would lead to such a conclusion.

4. *The falsity of the claims.*

■ The court found that application No. 1 was not a false claim. Its findings and conclusions appear at pp. 51–56 of 232 F.Supp. The evidence is by no means without conflict, but we find that it supports the court's findings and conclusions.

■ The court also found that applications Nos. 2–6 and 8–12, inclusive, were false in material respects, and that Woodbury "knowingly committed such acts of arranging for and making such false claims." (See 232 F.Supp. pp. 56–57). These findings are attacked by Woodbury's executrix in the cross appeal in No. 19,767, insofar as they are against Woodbury, and by the government insofar as they are against it. Again, our examination of the record convinces us that the findings are sustained by the record.

5. *The number of false claims.*

From the foregoing it appears that the government should have judgment, as to each of the 10 claims, for at least $2,000 or a total of $20,000. The government urges that there were really 32 false claims, not 10, and that it should therefore recover at least $64,000.

The trial court, although the question was preserved in the pretrial order, did not expressly dispose of it, except by stating that if the court were in error as to the affirmative defenses it would award the government $20,000. But it is clear that the findings do, in fact, dispose of the question, as to most of the claims.

■ The government's additional claims rest upon its theory that certain

documents attached to the applications made to the government for funds were also false, and that each such document is a separate false "bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition" within the meaning of the False Claim Act. We consider these documents by categories.

1. Each of the 11 applications for payment had attached to it a request for payment by Carlton, the supply subcontractor. It is claimed that each of these was false in two respects. (a) Each is said to misrepresent the contractual arrangement between Kodiak and Carlton and therefore also the disposition to be made of the funds. The court found against this contention and we have already held that this finding is supported. (b) As to several, it is claimed that completed house packages had not been delivered F.O.B. dock Portland as required. As to this the court also found against the government and we have held that the finding is supported.

2. Each of 6 of the applications for payment had attached to it a request for payment by Pacific Alaska Contractors, Inc., (P.A.C.) the site construction contractor, and each application stated that there was no default under that contract. In its findings (232 F.Supp. at 57) the court upheld the charge of fraud as to five of these. We hold that its finding is supported.

3. Applications Nos. 1 and 2 had attached to them bills of sale from Carlton to Aleutian. It is claimed that these are false because certain appliances covered by the bills of sale did not belong to Carlton and were missing. The court, as we have seen, found against these contentions.

4. Applications Nos. 1 and 2 also had attached to them chattel morgages from Aleutian to HHFA. These are claimed to be false for the same reason. The court's view was to the contrary.

■ Thus only five of the documents on which the government relies were found by the court to be false. Is each a false "claim," "bill," "voucher," "certifi-

cate," "affidavit" such as to require a recovery of a separate forfeiture for each? We think that the authorities preclude such a ruling. United States v. National Wholesalers, 9 Cir., 1956, 236 F.2d 944, 950–951; United States v. Grannis, 4 Cir., 1949, 172 F.2d 507, 515–516; United States v. Rohleder, 3 Cir., 1946, 157 F.2d 126, 131; cf. United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 552, 63 S.Ct. 379, 87 L.Ed. 443. We find nothing to the contrary in Toepleman v. United States, 4 Cir., 1959, 263 F.2d 697 on which the government relies. There, as here, $2,000 was awarded for each false separate claim for money. It does not appear that any separate awards were made based upon the number of false papers contained in or attached to a particular claim.

6. *Damages.*

As to damages, the court found:

"Under the ordinary circumstances, it would be beyond the scope of this opinion, and pure dictum, to pass on the question of damages. However, my findings and conclusions may not meet with the approval of the Court of Appeals. If the appellate court arrives at a different result, it might desire my views on the issue of damages.

"From all of the evidence in the case, I find that the plaintiff did not sustain damage by reason of what transpired on the Carlton contract, or otherwise. Plaintiff replaced, for use in completing the project, all funds that were diverted by him for temporary private use. For that matter, the plaintiff advanced for the use of the project, funds far in excess of any sums that he might have personally withdrawn under the Carlton contract, or otherwise." (232 F.Supp. at p. 59)

■ This finding is vigorously attacked by the government, which claims that it was damaged in the sum of $377,-182.48 and should recover double that amount. Substantially all of this claim is based upon the government's views as to the Carlton contract and "side agreement" (as the government calls it). The

theory is that large sums were diverted under the side agreement to Woodbury and not used by him to pay for actual work done under the subcontracts between Kodiak and Carlton, P.A.C., and Wynans, as the contract documents required that they be used. However, the court has found, and we have already indicated that the finding is supported, that the Carlton-Columbia Supply agreement was not a "side-agreement" or "kickback deal" but a bona fide subcontract. It follows that, as the court concluded, the payments on account of the Carlton contract were not induced by a false claim as to it and hence the damages which the government attributes to them are not recoverable in this false claim action.

There then remains the question: was the government damaged "by reason of" (see fn. 3, supra) the filing of any of the 10 claims found to be false by the court, or "by reason of" the falsities found? The falsities are of two kinds—failure to disclose outstanding lienable claims, as the application for funds requires, and failure to disclose that Kodiak, not P.A.C., was doing the site construction work, P.A.C. having gotten into financial difficulties. The work was ultimately done and the court has found that the funds obtained were used to pay for it. Funds obtained may have been used to pay many of the outstanding lienable claims, but it is clear that some of them, running into substantial amounts, were not paid and were outstanding when HHFA refused to advance additional funds in the fall of 1953. Ultimately, however, the project was completed, and so far as appears HHFA obtained the security that it bargained for when it agreed to make the loan.

Ordinarily the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it

would have paid if the claims had been truthful. Such a rule is readily applied, for example, where a false claim, showing unreal costs, is made in connection with a cost-plus type of contract. (Cf. United States v. Grannis, supra). The government's theory in connection with the so-called Carlton side-agreement would, if upheld, be of this type.

But the remaining—and only—false claims are of a different sort. HHFA agreed to loan 90% of FHA commitments up to $4,230,900. It was to get, as security for the loan, a mortgage on the completed project. This is what it loaned; this is what it got. It may well be surmised that if it had known the facts the government would have held up some payments until the project was properly protected against lienable claims, or until it was assured that Kodiak would and could complete the P.A.C. contract, or both. That is what it finally did. But there is no showing that it would not ultimately have paid out the same amount of money, or that it would have received a more valuable security for the loan, or if so, by how much. It can also be assumed that the government was put to a good deal of expense in the form of time and money spent by its employees in straightening out the mess that preceded the Completion Agreement and in protecting its interests thereafter. But no attempt was made to prove any such expenses. In short, we think that the court's finding as to actual damages is not clearly erroneous.[6]

7. *The findings regarding the Completion Agreement.*

Both in its first decision (192 F.Supp. 924, at pp. 934–947) and in the decision that is the subject of the present appeal in No. 19,767 (232 F.Supp. 49 at p. 58) the trial court held that the United States became a party to the Completion Agreement. We have already indicated that

---

6. Several of the cases cited under heading 1 in this opinion, especially United States ex rel. Marcus v. Hess, supra, express the thought that the $2,000 forfeiture provision was put into the statute because the government would have difficulty in proving the kinds of damages we have been discussing.

we think that the first holding was *coram non judice* because jurisdiction was not in the District Court under the Tort Claims Act but in the Court of Claims under the Tucker Act. (See our decision in Woodbury v. United States, 313 F.2d 291) Of course, the District Court did have jurisdiction to determine whether the case was a Tort Claims Act case. But because the case was not a Tort Claims Act case the court did not have jurisdiction to determine, or to make findings relating to, the merits of Woodbury's claim under the Tucker Act.

■ In the present case we have assumed that the government became a party to the Completion Agreement, but have held that even so the Completion Agreement is not a defense to the government's claims. Thus the court's finding is unnecessary so far as the result here is concerned. Woodbury's claim is still pending in the Court of Claims which is the proper forum in which to decide it. We therefore think that the court's finding in this case, as it relates to that claim, should be set aside.

8. *The appeals in No. 19,768.*

The government is entitled to but one judgment against the Woodbury estate. That judgment it will recover in No. 19,-767. Therefore it is unnecessary to substitute the executrix as an appellee or to pass upon the propriety of the dismissal of Woodbury as a defendant in No. 19,-768. The other contentions of the government are disposed of by what we have already decided.

In No. 19,767:

1. The motion to dismiss on the ground that the action has abated is denied.

2. The judgment is reversed, with direction to the trial court to set aside its findings in relation to the Completion Agreement and to enter a judgment in favor of the United States and against Lucille B. Woodbury, as executrix of the estate of Ray B. Woodbury, deceased, in the principal sum of $20,000.

3. In all other respects the judgment is affirmed.

In No. 19,768, the motion to substitute the executrix as a defendant and appellee is denied and the judgment is affirmed. The second appeal is dismissed.