**UNITED STATES of America,**
**Appellant/Cross–Appellee**

v.

**George O. KRIZEK, M.D., et al.,**
**Appellees/Cross–Appellants.**

**Nos. 96–5045, 96–5046.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 2, 1996.

Decided May 2, 1997.

Mark E. Nagle, Assistant United States Attorney, argued the cause for appellant/cross-appellee, with whom Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence and Bruce R. Hegyi, Assistant United States Attorneys, Washington, DC, were on the briefs.

Paul D. Clement argued the cause for appellees/cross-appellants, with whom Christopher A. Cole and Paul T. Cappuccio, Washington, DC, were on the briefs.

Before: SILBERMAN, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge.

This appeal arises from a civil suit brought by the government against a psychiatrist and his wife under the civil False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3731, and under the common law. The District Court found defendants liable for knowingly submitting false claims and entered judgment against defendants for $168,105.39. The government appealed, and the defendants filed a cross-appeal. We hold that the District Court erred and remand for further proceedings.

I.

The government filed suit against George and Blanka Krizek for, *inter alia,* violations of the civil FCA, 31 U.S.C. §§ 3729–3731. Dr. George Krizek is a psychiatrist who prac-

ticed medicine in the District of Columbia. His wife, Blanka Krizek, worked in Dr. Krizek's practice and maintained his billing records. At issue are reimbursement forms submitted by the Krizeks to Pennsylvania Blue Shield ("PBS") in connection with Dr. Krizek's treatment of Medicare and Medicaid patients.

The government's complaint alleged that between January 1986 and March 1992 Dr. Krizek submitted 8,002 false or unlawful requests for reimbursement in an amount exceeding $245,392. The complaint alleged two different types of false claims: first, some of the services provided by Dr. Krizek were medically unnecessary; and second, the Krizeks "upcoded" the reimbursement requests, that is billed the government for more extensive treatments than were, in fact, rendered.

A doctor providing services to a Medicare or Medicaid recipient submits a claim for reimbursement to a Medicare carrier, in this case PBS, on a form known as the "HCFA 1500." The HCFA 1500 requires the doctor to provide his identification number, the patient's information, and a five-digit code identifying the services for which reimbursement is sought. A list of the five-digit codes is contained in the American Medical Association's Current Procedures Terminology Manual ("CPT"). For instance, the Manual notes that the CPT code "90844" is used to request reimbursement for an individual medical psychotherapy session lasting approximately 45 to 50 minutes. The CPT code "90843" indicates individual medical psychotherapy for 20 to 30 minutes. An HCFA 1500 lists those services provided to a single patient, and may include a number of CPT codes when the patient has been treated over several days or weeks.

Before the District Court, the government argued that the amount of time specified by the CPT for each reimbursement code indicates the amount of time spent "face-to-face" with the patient. The government focused on the Krizeks' extensive use of the 90844 code. According to the government, this code should be used only when the doctor spends 45 to 50 minutes with the patient, not including time spent on the phone in consultation with other doctors or time spent discussing the patient with a nurse. The government argued that the Krizeks had used the 90844 code when they should have been billing for shorter, less-involved treatments.

Based on its claims of unnecessary treatment and up-coding the government sought an extraordinary $81 million in damages. This amount included $245,392 in actual damages and civil penalties of $10,000 for each of 8,002 separate CPT codes. During a three-week bench trial, the District Court determined that the case would initially be tried on the basis of seven patients which the government described as representative of the Krizeks' improper coding and treatment practices. *United States v. Krizek,* No. 93–0054 (D.D.C. March 9, 1994) (Protective Order). The determination of liability would then "be equally applicable to all other claims." *Id.* On July 19, 1994, the District Court issued a Memorandum Opinion, *United States v. Krizek,* 859 F.Supp. 5, 8 (D.D.C.1994) [hereinafter *Krizek I*], holding that the government had not established that the Krizeks submitted claims for unnecessary services. The Court noted that the government's witness failed to interview the patients or any doctors or nurses. *Id.* The District Court also rejected the government's theory that the Krizeks were liable for requesting reimbursement when some of the billed time was spent out of the presence of the patient. *Id.* at 10. The Court found that it was common and proper practice among psychiatrists to bill for time spent reviewing files, speaking with consulting physicians, etc. *Id.*

Despite having rejected the government's arguments on these claims, the Court determined that the Krizeks knowingly made false claims in violation of the FCA. *Id.* at 13. The Court found that because of a "seriously deficient" system of recordkeeping the Krizeks "submitted bills for 45–50 minute psychotherapy sessions ... when Dr. Krizek could not have spent the requisite time providing services, face-to-face, or otherwise." *Id.* at 11, 12. For instance, on some occasions within the seven-patient sample, Dr. Krizek submitted claims for over 21 hours of patient treatment within a 24–hour period. *Id.* at 12. The Court stated, "While Dr.

Krizek may have been a tireless worker, it is difficult for the Court to comprehend how he could have spent more than even ten hours in a single day serving patients." *Id.* The Court stated that these false statements

> were not "mistakes" nor merely negligent conduct. Under the statutory definition of "knowing" conduct the Court is compelled to conclude that the defendants acted with reckless disregard as to the truth or falsity of the submissions. As such, they will be deemed to have violated the False Claims Act.

*Id.* at 13–14.

Having found the Krizeks liable within the seven-patient sample, the Court attempted to craft a device for applying the determination of liability to the entire universe of claims. Here, the District Court relied on the testimony of a defense witness that he could not recall submitting more than twelve 90844 codes—nine hours worth of patient treatment—for a single day. *Id.* at 12. Based on this testimony, the District Court stated that nine hours per day was "a fair and reasonably accurate assessment of the time Dr. Krizek actually spent providing patient services." *Id.* The Court, accordingly, determined that the Krizeks would be liable under the FCA on every day in which

> claims were submitted in excess of the equivalent of twelve (12) 90844 claims (nine patient-treatment hours) in a single day and where the defendants cannot establish that Dr. Krizek legitimately devoted the claimed amount of time to patient care on the day in question.

*Id.* at 14.

On April 6, 1995, the District Court, with the consent of the parties, referred the matter to a Special Master with instructions to investigate the 8,002 challenged CPT codes and, applying the nine-hour presumption, to determine 1) the single damages owed by the Krizeks; 2) the amount of the single damages trebled; 3) the number of false claims submitted by defendants; and 4) the number of false claims multiplied by $5000. *United States v. Krizek*, No. 93–0054 (D.D.C. April 6, 1995) (Order of Reference). After considering evidence submitted by the parties, the Special Master determined that the defen-

dants requested reimbursement for more than nine hours per day of patient treatment on 264 days. *United States v. Krizek*, No. 93–0054, at 15 (D.D.C. June 6, 1995) (Special Master Report). The Special Master found single damages of $47,105.39, which when trebled totaled $141,316.17. He then determined to treat each of the 1,149 false code entries as a separate claim, even where several codes were entered on the same HCFA 1500. Multiplied by $5000 per false claim, this approach produced civil penalties of $5,745,000.

After considering motions by the parties, the District Court issued a second opinion, *United States v. Krizek*, 909 F.Supp. 32 (D.D.C.1995) [hereinafter *Krizek II*], which modified its earlier decision. The Court stated that it accepted the Special Master's factual findings, *id.* at 33, but was applying a different approach in calculating damages. First, the Court awarded damages of $47,-105.38 to the government for unjust enrichment based on the nine-hour presumption. *Id.* at 33. The Court then stated:

> While the Court set a nine hour benchmark to determine which claims were improper, the Court will now set an even higher benchmark for classifying claims that fall under the False Claims Act so that there can be no question as to the falsity of the claims. The Court has determined that the False Claims Act has been violated where claims have been made totaling in excess of twenty-four hours within a single twenty-four hour period and where defendants have provided no explanation for justifying claims made for services rendered virtually around the clock.

*Id.* at 34. Claims in excess of twenty-four hours of patient treatment per day had been made eleven times in the six-year period. *Id.* The Court assessed fines of $10,000 for each of the eleven false claims, which, combined with single damages of $47,105.39, totaled $157,105.39. *Id.* The Court also assessed Special Master's fees against the Krizeks in the amount of $11,000. *Id.* The government appealed, and the Krizeks cross-appealed. We first turn to the government's appeal.

## II.

The government argues that the District Court's use of a twenty-four hour presumption, having earlier announced its intent to use nine hours as the benchmark, prejudiced its prosecution of the claim. We agree and remand for further proceedings.

In *Krizek I*, the District Court found nine hours to be "a fair and reasonably accurate assessment of the time Dr. Krizek actually spent providing patient services" and held that defendants were presumptively liable for all claims in excess of nine hours per day. 859 F.Supp. at 12. Before the Special Master, the government relied on this finding by adopting conservative assumptions that favored the Krizeks. For instance, the government assumed that a 90843 code, indicating a 20 to 30 minute psychotherapy session, would be credited as a 20 minute treatment for determining whether the Krizeks had over-billed. Likewise, the government treated 90844 claims, which indicate 45 to 50 minute sessions, as 45 minutes of patient treatment. Considering the large number of claims submitted on any given day these assumptions may have had a material effect on the damages proved up by the government. However, because the damages were likely to be substantial already, the government chose not to proffer less generous approximations. The government also relied on *Krizek I* by declining to pursue discovery concerning Dr. Krizek's private pay patients. Presumably, if the government had introduced evidence on these additional patients it could have established that the Krizeks billed in excess of twenty-four hours on more days than indicated by Medicare and Medicaid records alone.

■ The District Court announced its intention to abandon the nine-hour presumption in favor of a stricter benchmark only after receiving the Special Master's Report. While this higher standard may have been permissible, the District Court erred in issuing judgment based on the new presumption without permitting the parties to introduce additional evidence. We do not hold, as urged by the government, that the District Court was prohibited from revisiting its earlier finding and replacing it with the twenty-four hour presumption. We hold instead that, even assuming the District Court was free to revisit this issue, it could not properly do so without allowing the parties to introduce additional evidence.

■ The government also asserts that the District Court impermissibly disregarded the factual findings of the Special Master in imposing liability for only eleven false claims as opposed to 1,149. We disagree. Under FED. R. CIV. PRO. 53(e)(2) "the court shall accept the master's findings of fact unless clearly erroneous." Findings of a special master are not to be disturbed unless the court "is left with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969) (internal quotations omitted); *see also* 9A Charles Alan WRIGHT & Arthur R. MILLER, CIVIL PRACTICE AND PROCEDURE: CIVIL § 2614, at 699 (2nd ed.1995). However, the Special Master's Report did not determine, as a matter of fact, that 1,149 false claims had been made. His report stated only that, *applying the nine-hour presumption* established by the District Court, 1,149 claims had been made in excess of the benchmark. As the Special Master stated himself, "What I did was try to identify the number of claims in excess of nine hours a day, and pursuant to the Court's earlier ruling, I called those false claims and treated them as false claims." *United States v. Krizek*, No. 93–0054, at 9 (D.D.C. Dec. 15, 1995) (Transcript of Hearing). Therefore, the District Court did not reject the factual findings of the Special Master, but only afforded to those findings a different legal consequence.

## III.

■ The Krizeks cross-appeal on the grounds that the District Court erroneously treated each CPT code as a separate "claim" for purposes of computing civil penalties. The Krizeks assert that the claim, in this context, is the HCFA 1500 even when the form contains a number of CPT codes.

■ The FCA defines "claim" to include

any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(c). Whether a defendant has made one false claim or many is a fact-bound inquiry that focuses on the specific conduct of the defendant. In *United States v. Bornstein*, 423 U.S. 303, 307, 96 S.Ct. 523, 527, 46 L.Ed.2d 514 (1976),[1] for instance, the Supreme Court considered the liability of a subcontractor who delivered 21 boxes of falsely labeled electron tubes to the prime contractor in three separate shipments. The prime contractor, in turn, delivered 397 of these tubes to the government and billed the government using 35 invoices. The trial court awarded 35 statutory forfeitures against the subcontractor, one for each invoice. The Court of Appeals reversed, holding that there was only one forfeiture because there had been only one contract. The Supreme Court disagreed with both positions and held that there had been three false claims by the subcontractor, one for each shipment of falsely labeled tubes. *Id.* at 313, 96 S.Ct. at 529–30. The Court stated, "[T]he focus in each case [must] be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures." *Id.* Because the subcontractor committed three separate causative acts—dispatching each shipment of the falsely marked tubes—it would be liable for three separate forfeitures. *Id.; see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943) (holding that the government was entitled to a forfeiture for each project for which a collusive bid was entered even though the bids included additional false forms); *United States v. Grannis*, 172 F.2d 507, 515 (4th Cir.) (assessing ten forfeitures

against defendant for each of ten fraudulent vouchers even though the vouchers listed 130 items), *cert. denied*, 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727 (1949).

*Bornstein* was applied by the United States Court of Claims in *Miller v. United States*, 213 Ct.Cl. 59, 550 F.2d 17, 24 (1977), another case considering the FCA liability of a contractor. The contractor in *Miller* submitted five monthly billings to the government in which eleven invoices were enclosed. The Court found that there had been five false claims, one for each occasion on which the contractor made a request for payment. *Id.* 550 F.2d at 23. Similarly, in *United States v. Woodbury*, 359 F.2d 370, 378, (9th Cir.1966), the Ninth Circuit considered what civil penalties attached to ten false applications for payment when the applications included false invoices. Again, the Court imposed ten penalties, one for each separate submission, even though the false invoices were used to calculate the amount submitted. *Id.* at 377–78.

■ The gravamen of these cases is that the focus is on the conduct of the defendant. The Courts asks, "With what act did the defendant submit his demand or request and how many such acts were there?" In this case, the Special Master adopted a position that is inconsistent with this approach. He stated,

> The CPT code, not the HCFA 1500 form, is the source used to permit federal authorities to verify and account for discrete units of medical service provided, billed and paid for. In sum, the government has demanded a specific accounting unit to identify and verify the services provided, payments requested and amounts paid under the Medicare/Medicaid program. The CPT code, not the HCFA 1500 form, is that basic accounting unit.

*United States v. Krizek*, No. 93–0054, at 21 (D.D.C. June 6, 1995) (Special Master Report). The Special Master concluded that because the government used the CPT code

**1.** Although *Bornstein* applied an earlier version of the False Claims Act, the definition of "claim" applied by the Court was similar to the definition applicable here. *See Bornstein*, 423 U.S. at 309

n. 4, 96 S.Ct. at 528 n. 4 (stating that a claim is "a demand for money or for some transfer of public property") (internal quotations omitted).

in processing the claims, the CPT code, and not the HCFA 1500 in its entirety, must be the claim. This conclusion, which was later adopted by the District Court, misses the point. The question turns, not on how the government chooses to process the claim, but on how many times the defendants made a "request or demand." 31 U.S.C. § 3729(c). In this case, the Krizeks made a request or demand every time they submitted an HCFA 1500.

Our conclusion that the claim in this context is the HCFA 1500 form is supported by the structure of the form itself. The medical provider is asked to supply, along with the CPT codes, the date and place of service, a description of the procedures, a diagnosis code, and the charges. The charges are then totaled to produce one request or demand—line 27 asks for total charges, line 28 for amount paid, and line 29 for balance due. The CPT codes function in this context as a type of invoice used to explain how the defendant computed his request or demand.

■ The government contends that fairness or uniformity concerns support treating each CPT code as a separate claim, arguing that "[t]o count woodenly the number of HCFA 1500 forms submitted by the Krizeks would cede to medical practitioners full authority to control exposure to [FCA] simply by structuring their billings in a particular manner." Precisely so. It is conduct of the medical practitioner, not the disposition of the claims by the government, that creates FCA liability. *See Alsco–Harvard Fraud Litigation,* 523 F.Supp. 790, 811 (D.D.C.1981) (remanding for determination whether invoices were presented for payment at one time or individually submitted as separate demands for payment). Moreover, even if we considered fairness to be a relevant consideration in statutory construction, we would note that the government's definition of claim permitted it to seek an astronomical $81 million worth of damages for alleged actual damages of $245,392. We therefore remand for recalculation of the civil penalty.

The Krizeks also challenge the District Court's definition of claim on the ground that the penalties sought in the complaint would violate the Excessive Fines Clause. U.S. Const. amend. VIII. Because we hold that the District Court incorrectly defined claim, we do not find it necessary to reach the Krizeks' Excessive Fines argument, in keeping with the principle that courts should avoid unnecessarily deciding constitutional questions. *See Ashwander v. TVA,* 297 U.S. 288, 345–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ The Krizeks also challenge the District Court's use of a seven-patient sample to determine liability. As mentioned, the District Court did not consider specific evidence as to the truth or falsity of the vast majority of the challenged claims. Instead, the District Court determined to go to trial on the issue of liability using a sample comprised of cases selected by the government. As the Court explained,

> Given the large number of claims, and the acknowledged difficulty of determining the "medical necessity" of 8,002 reimbursement claims, it was decided that this case should initially be tried on the basis of seven patients and two hundred claims that the government believed to be representative of Dr. Krizek's improper coding and treatment practices. It was agreed by the parties that a determination of liability on Dr. Krizek's coding practices would be equally applicable to all 8,002 claims in the complaint.

*Krizek I,* 859 F.Supp. at 7 (citation omitted). The Krizeks assert that the District Court erred in freeing the government of its burden of proving the falsity of each and every claim. According to the Krizeks, they did not agree that the sample would form the basis of determining liability for the entire universe of claims; they agreed to the seven-patient sample only as a means of testing the government's theories.

We disagree with the Krizeks' interpretation of the scope of their agreement at trial. During a Status Hearing on October 19, 1993, counsel for the Krizeks not only agreed to, but proffered, the idea of going to trial based on a representative sample. At the hearing, the Court discussed with government counsel whether the Court might make an overall determination and then submit the

case to a special master. Defense counsel stated,

> Judge, may I say that we did pick out this population or the government finally identified six people. They threw in a seventh for purposes of the summary judgment motion as their best cases. Why can't we try it on those? That is to get 8,336 separate billings for God knows how many patients over six years is—

Appendix at 140. The Court responded, "You want to try six of them, we'll try six of them." Defense counsel answered "Yes." Government counsel asked, "The seven that we've got, Your Honor?" The Court stated, "Yes, we'll try those seven." *Id.* Understanding that the parties were agreeing to go to trial based on the seven representative patients, the District Court ordered,

> Having heard argument of the parties, the Court believes that it is unnecessary at this time for the Krizeks to search for and produce all of their records. The government has identified seven patients and two hundred claims for reimbursement that the government believes are representative of the Krizeks' improper coding and treatment practices. All document production for these patients and claims has already occurred. This case will go to trial on this issue of liability using these seven patients as a representative sample. A determination of liability on the issue of improper coding would be equally applicable to all other claims. As to the allegations of performance of unnecessary services, it may be that further discovery will have to take place to establish liability for the other patients and claims alleged by the government.

*United States v. Krizek*, No. 93–0054, at 2 (D.D.C. March 9, 1994) (Protective Order). This order met with no contemporaneous objection by the Krizeks. We conclude, therefore, that the Krizeks are bound by their agreement at trial that liability would be based on the seven-patient sample with damages to be extrapolated later.

■ Having determined that liability was properly determined by the seven-patient sample, we turn now to the question whether, in considering the sample, the District Court applied the appropriate level of scienter. The FCA imposes liability on an individual who "knowingly presents" a "false or fraudulent claim." 31 U.S.C. § 3729(a). A person acts "knowingly" if he:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information,

and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b). The Krizeks assert that the District Court impermissibly applied the FCA by permitting an aggravated form of gross negligence, "gross negligence-plus," to satisfy the Act's scienter requirement.

In *Saba v. Compagnie Nationale Air France,* 78 F.3d 664 (D.C.Cir.1996), we considered whether reckless disregard was the equivalent of willful misconduct for purposes of the Warsaw Convention. We noted that reckless disregard lies on a continuum between gross negligence and intentional harm. *Id.* at 668. In some cases, recklessness serves as a proxy for forbidden intent. *Id.* (citing *SEC v. Steadman,* 967 F.2d 636, 641 (D.C.Cir.1992)). Such cases require a showing that the defendant engaged in an act known to cause or likely to cause the injury. *Id.* at 669. Use of reckless disregard as a substitute for the forbidden intent prevents the defendant from "deliberately blind[ing] himself to the consequences of his tortious action." *Id.* at 668. In another category of cases, we noted, reckless disregard is "simply a linear extension of gross negligence, a palpable failure to meet the appropriate standard of care." *Id.* In *Saba,* we determined that in the context of the Warsaw Convention, a showing of willful misconduct might be made by establishing reckless disregard such that the subjective intent of the defendant could be inferred. *Id.* at 669.

The question, therefore, is whether "reckless disregard" in this context is properly equated with willful misconduct or with aggravated gross negligence. In determining that gross negligence-plus was sufficient, the District Court cited legislative history equat-

ing reckless disregard with gross negligence. A sponsor of the 1986 amendments to the FCA stated,

> Subsection 3 of Section 3729(c) uses the term "reckless disregard of the truth or falsity of the information" which is no different than and has the same meaning as a gross negligence standard that has been applied in other cases. While the Act was not intended to apply to mere negligence, it is intended to apply in situations that could be considered gross negligence where the submitted claims to the Government are prepared in such a sloppy or unsupervised fashion that resulted in overcharges to the Government. The Act is also intended not to permit artful defense counsel to require some form of intent as an essential ingredient of proof. This section is intended to reach the "ostrich-with-his-head-in-the-sand" problem where government contractors hide behind the fact they were not personally aware that such overcharges may have occurred. This is not a new standard but clarifies what has always been the standard of knowledge required.

132 Cong. Rec. H9382–03 (daily ed. Oct. 7, 1986) (statement of Rep. Berman). While we are not inclined to view isolated statements in the legislative history as dispositive, we agree with the thrust of this statement that the best reading of the Act defines reckless disregard as an extension of gross negligence. Section 3729(b)(2) of the Act provides liability for false statements made with deliberate ignorance. If the reckless disregard standard of section 3729(b)(3) served merely as a substitute for willful misconduct—to prevent the defendant from "deliberately blind[ing] himself to the consequences of his tortious action"—section (b)(3) would be redundant since section (b)(2) already covers such struthious conduct. See Kungys v. United States, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988) (citing the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"). Moreover, as the statute explicitly states that specific intent is not required, it is logical to conclude that reckless disregard in this context is not a "lesser form of intent," see Steadman, 967 F.2d at

641–42, but an extreme version of ordinary negligence.

■ We are unpersuaded by the Krizeks' citation to the rule of lenity to support their reading of the Act. Even assuming that the FCA is penal, the rule of lenity is invoked only when the statutory language is ambiguous. Deal v. United States, 508 U.S. 129, 135, 113 S.Ct. 1993, 1998, 124 L.Ed.2d 44 (1993). Because we find no ambiguity in the statute's scienter requirement, we hold that the rule of lenity is inapplicable.

■ We are also unpersuaded by the Krizeks' argument that their conduct did not rise to the level of reckless disregard. The District Court cited a number of factors supporting its conclusion: Mrs. Krizek completed the submissions with little or no factual basis; she made no effort to establish how much time Dr. Krizek spent with any particular patient; and Dr. Krizek "failed utterly" to review bills submitted on his behalf. Krizek I, 859 F.Supp. at 13. Most tellingly, there were a number of days within the seven-patient sample when even the shoddiest recordkeeping would have revealed that false submissions were being made—those days on which the Krizeks' billing approached twenty-four hours in a single day. On August 31, 1985, for instance, the Krizeks requested reimbursement for patient treatment using the 90844 code thirty times and the 90843 code once, indicating patient treatment of over 22 hours. Id. at 12. Outside the seven-patient sample the Krizeks billed for more than twenty-four hours in a single day on three separate occasions. Krizek II, 909 F.Supp. at 34. These factors amply support the District Court's determination that the Krizeks acted with reckless disregard.

Finally, we note that Dr. Krizek is no less liable than his wife for these false submissions. As noted, an FCA violation may be established without reference to the subjective intent of the defendant. Dr. Krizek delegated to his wife authority to submit claims on his behalf. In failing "utterly" to review the false submissions, he acted with reckless disregard.

We turn finally to the Krizeks' claim that the Special Master's fees should be reduced

because he "wasted considerable time by utterly failing to adhere to the intent and purpose of the Order of Reference and engaging in activities outside the scope of the reference." Brief for Appellees/Cross–Appellants at 28. We fail to see how the Special Master's time was wasted.

■■■ The jurisdiction of a Special Master is dependent on the order of reference. *See* FED. R. CIV. PRO. 53(C). In this case, the Order of Reference directed the Special Master to calculate the number of false claims within the parameters established in *Krizek I*. *United States v. Krizek*, No. 93–0054 (D.D.C. April 6, 1995) (Order of Reference). *Krizek I* stated that the Court "will hold the defendants liable under the False Claims Act on those days where claims were submitted in excess of the equivalent of twelve (12) 90844 claims (nine patient-treatment hours) in a single day and where the defendants cannot establish that Dr. Krizek legitimately devoted the claimed amount of time to patient care on the day in question." 859 F.Supp. at 14. The Krizeks argue that the Special Master wasted time considering rebuttal evidence he would eventually reject as "beyond his jurisdiction." The evidence the Special Master wasted time considering, according to the Krizeks, was evidence they, themselves, proffered. Before the Special Master, the Krizeks did not present specific proof that Dr. Krizek had, in fact, provided the claimed amount of patient-treatment time. The only rebuttal evidence they provided attacked the merits of the nine-hour presumption. In response, the Special Master correctly determined that he lacked authority to reconsider the District Court's opinion. We reject the Krizeks' contention that a litigant should not be billed for time spent considering irrelevant evidence when the evidence was presented by the complaining party.

The Krizeks also argue that the Special Master wasted time researching the definition of the term "claim." We do not understand how the Special Master could have determined the number of false claims, as directed, without researching the question of what constitutes a "claim."

Finally, the Krizeks object that some of the Special Master's functions were referred to a paralegal. However, the Order of Reference specifically instructed the Special Master to delegate tasks to legal assistants where "efficient and economical." As a result, we affirm the award of fees to the Special Master.

## IV.

We, therefore, conclude that the District Court erred in replacing the nine-hour presumption with a twenty-four hour benchmark without providing an opportunity for the litigants to present additional evidence. We also hold that the "claim" in this context is the HCFA 1500 form. We hold that cross-appellants are bound by their stipulation that liability would be determined by the seven-patient sample. In considering this sample the District Court properly interpreted "reckless disregard" to be a linear extension of gross negligence, or "gross negligence-plus." Finally, we affirm the award of fees to the Special Master. We remand to the District Court for further proceedings consistent with this opinion.

*So ordered.*