UNITED STATES ex rel. Lorryn A. OLIVER, Plaintiff–Counter–Defendant–Appellee,

The United States of America, Plaintiff–Appellee,

v.

THE GYRO HOUSE; Emery C. Oxley, Jr.; and Ann M. Anderson, Defendants–Counterclaimants–Appellants,

Richard T. Anderson, Defendant.

Nos. 99–16787, 00–15467.

D.C. No. CV–97–1001 MLS/PAN.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2001.

Decided March 29, 2001.

Before B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. A gyroscope is a navigational device capable of measuring the movement of an aircraft by

## MEMORANDUM *

In this action under the False Claims Act, 31 U.S.C. §§ 3729–3733, the district court entered summary judgment for the government after finding that defendants falsified serial numbers and submitted falsified Federal Aviation Administration "Form 8130's" in connection with a Foreign Military Sales contract to recondition gyroscopes.[1] The district court awarded the government damages and penalties in the amount of $235,234, and entered an order awarding attorneys' fees to the relator. On appeal, Defendants argue that: (1) triable issues of fact exist regarding the nexus between defendants' false statements and false claims and any payments by the United States or allocation of foreign military credits; (2) the district court miscalculated the damages award; and (3) the district court erred in allowing and considering late-filed declarations in support of the relator's motion for attorney's fees. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

### Defendants' Arguments

#### 1. Triable Issues of Fact

Defendants contend that triable issues of fact exist regarding the following: (1) the government's reliance on the Form 8130's in paying out funds or allocating Foreign Military Credits; (2) the damages the government suffered due to The Gyro House's ("TGH") serial number "swap"; and (3) relator Oliver's authority as TGH's agent.

With respect to Defendants' first alleged disputed issue of material fact, any dispute regarding the government's reliance on the

sensing deviations from a stored, standard trajectory. Gyroscopes are critical to the safe and proper operation of the aircraft in which they are installed and are considered a "safety of flight" part. The gyroscopes at issue in this case are used only in military aircraft.

Form 8130's is irrelevant at this point. Although the forged Form 8130's were the basis for the district court's imposition of civil penalties, the district court did not rely on this falsification in awarding damages. The actual damages the district court awarded were based on the false serial numbers placed on the gyroscopes.

Second, Defendants argue that there are disputed facts regarding the part played by Defendants' serial number swap in any damages the government incurred. Defendants do not dispute that the serial numbers were false. Rather, they blame the other entity involved in the falsification (the subcontractor) for directing TGH to change the numbers.[2] The material facts—the falsity of the serial numbers and Defendants' knowledge of the falsity—are not in dispute.

Third, regardless of whether relator Oliver had authority to prepare the Form 8130's, the district court's damages award was predicated not on the submission of the admittedly forged Form 8130's, but on the falsified serial numbers. In addition, even if Oliver lacked authority, Defendant Oxley admitted that he approved the serial number swap. Thus, under *Defendants'* theory, Oliver's actions are ancillary to Defendants' admitted conduct.

Furthermore, no genuine issues of material fact exist regarding Oliver's authority. She was the marketing manager of TGH and was responsible for negotiating the contracts involved in this litigation, which she solicited during her employment at TGH. Defendants admitted in their answer that Oliver directed TGH employees to place incorrect serial numbers on the substituted gyroscopes, that she prepared the Form 8130's that contained false information, that she persuaded defendant

Anderson to forge her husband's signature, and that she shipped the gyroscopes and forms to the subcontractor. Whether Oliver also acted in her own self-interest is beside the point; TGH was paid in full and thus benefitted from Oliver's actions, authorized or not. Accordingly, we reject Defendants' arguments.

### 2. *Damages Calculation*

■ Defendants argue that they are not responsible for the ultimate price the government was billed for the gyroscopes and that the district court should have calculated any damages starting with the sum TGH received ($42,127), not the contract price ($123,600). The government also failed, Defendants contend, to establish a lack of market value for the six gyroscopes. Specifically, Defendants argue that the government had to prove that the instruments lacked "airworthiness."

■ "Damages awarded under the False Claims Act typically are liberally calculated to ensure that they 'afford the government complete indemnity for the injuries done it.'" *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443 (1943), *cited in United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir.1998). The measure of the government's damages is "the amount that it paid out by reason of the false statements over and above what it would have paid if the claim had been truthful." *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir.1966). There is no dispute that the government paid the full contract price for the gyroscopes. There is also no dispute that the gyroscopes TGH sent were not what the contract provided for nor were they what *TGH* stated they

---

**2.** Defendants cannot avoid responsibility for what they knowingly and willingly did because the subcontractor requested that they comply in changing serial numbers on the

gyroscopes. Indeed, when Congress amended the False Claims Act in 1986, special attention was paid to the standard of knowledge required for liability.

were (i.e., the same ones TGH had received from the subcontractor). The government established the gyroscopes' lack of value, including the near impossibility of verifying maintenance, flight, and manufacturing history. These gyroscopes, moreover, were returned and not used. To the extent TGH contends that the gyroscopes' market value must be considered, the undisputed facts show that they have *no* value.

It is no defense, moreover, that Defendants sent the government gyroscopes that were equivalent to or even better than the ones they were supposed to provide. *See, e.g., United States v. Aerodex*, 469 F.2d 1003, 1007–08 (5th Cir.1972) (providing an allegedly equivalent item will not relieve defendant of liability if it is shown that defendant sought to deceive the government); *United States v. National Wholesalers*, 236 F.2d 944, 950 (9th Cir.1956) (notwithstanding comparable performance of counterfeit item, defendant still liable under False Claims Act for deliberately misbranding generators).

Defendants' final complaint that the damages the district court awarded against TGH and Oxley were out of proportion to the amount of the government's settlement with the subcontractor (not a party here) also fails. Although defendants rely heavily on *United States v. Bornstein*, 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), the case supports the government's position. Contrary to Defendants' argument, the Supreme Court in *Bornstein* did not require parity or proportionality in forfeitures (penalties). Rather, "the focus in each case [must] be upon the specific conduct of the person from whom the Government seeks to col-

lect the statutory forfeitures." *Id.* at 313. *Bornstein* does not support Defendants' contention that its damages should more closely parallel the amount of the subcontractorgovernment settlement.

*Bornstein* also provides no authority for Defendants' position that deductions and setoffs should occur before trebling.[3] Indeed, the Supreme Court declared that the government's damages "should be doubled before any compensatory payments are deducted, because that method of computation most faithfully conforms to the language and purpose of the Act." *Id.* at 314 and n. 10, 96 S.Ct. 523 ("The statute speaks of doubling 'damages' and not doubling 'net damages' or 'uncompensated damages.' "). Not only does this method of calculation "comport[ ] with the congressional judgment that double damages are necessary to compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims[,]" but doubling before deducting also "fixes the liability of the defrauder without reference to the adventitious actions of other persons." *Id.* at 315, 96 S.Ct. 523.

Even recognizing that penalties and damages are to be calculated based on what *these* Defendants did, Defendants nevertheless received a setoff for the portion of the government's settlement with the subcontractor that was attributable to the six gyroscopes at issue. The district court multiplied the amount of the settlement with the subcontractor, $113,000 (representing thirty-one gyroscopes), by six and divided by 31: $21,965.50.[4] As the settlement also provided for six replacement gyroscopes, valued at the contract

---

**3.** When the Court decided *Bornstein,* only doubling was permitted.

**4.** By our calculation, this figure should have been $21,870.97. The sum of $145,470.97

should have been deducted from the trebled damages ($370,800) for a total of $225,329.03. With the civil penalty, the award should be $235,329.03.

price of $123,600.00, the district court properly added this figure to the sum of $21,965.50, and deducted the total of $145,565.50 from the trebled damages. *Id.* at 234. Other than to correct a minor arithmetic error, the district court's calculation requires no further adjustment.

### 3. *Attorneys' Fees*

Defendants do not challenge the amount of attorneys' fees ($18,009.50); they argue that the district court erred in allowing relator's counsel to supplement their motion for fees. Defendants contend that the court misread the Eastern District's Local Rules 54–293 and 78–230 to allow the late filing of supporting documentation. Defendants argue that because relator's counsel failed to present evidence of excusable neglect, the district court exceeded its discretion in allowing the late filings.

We read the Eastern District's Local Rule 54–293 in conjunction with Federal Rule of Civil Procedure 54(d). Within this context, the Eastern District set forth its particular requirements and criteria, extending the filing deadline from 14 to 30 days. The Advisory Committee's note on the 1993 amendment of Federal Rule 54(d) makes clear that filing the motion, even if it is not complete, is the principal concern. Nothing in Local Rule 54–293 purports to alter that guiding policy.

Local Rule 78–230 does not compel the harsh result Defendants seek either. Section (b) expressly reserves the court's authority to enter orders as it sees fit: "Except as otherwise provided *in these Rules* or *as ordered* or *allowed by the Court,* all motions shall be ...." Section (b) also mandates the amount of notice the moving party must give prior to a hearing. It does not state that motions will necessarily be *heard* within the 28 or 31 days specified in the Local Rules, but the moving party cannot "count backward" from the hearing date to allow any fewer days than the specified number to the opposing party. Thus, contrary to Defendants' view that no "saving mechanism" exists in the Eastern District Local Rules for the late filing of declarations or other supporting documentary evidence, Local Rule 78–230(b) lets the court order *or* allow "otherwise." The Local Rule does not limit the court's ability to "order" or "allow" late filings only in the case of excusable neglect, as Defendants argue. We find no error or abuse of discretion, and therefore affirm the award of attorneys' fees.

AFFIRMED.