UNITED STATES of America,
Appellant/Cross–Appellee,

v.

George O. KRIZEK, M.D. and Blanka
H. Krizek, Appellees/Cross–
Appellants.

Nos. 98–5455, 98–5456.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1999.

Decided Oct. 5, 1999.

Mark E. Nagle, Assistant U.S. Attorney, argued the cause for appellant/cross-appellee. Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence and Dara A. Corrigan, Assistant U.S. Attorneys, were on the briefs.

Jeffrey Bossert Clark argued the cause for appellees/cross-appellants. With him on the briefs was Karen N. Walker.

Before: WALD, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

After a three-week bench trial, the district court found that defendants, a psychiatrist and his wife/secretary, submitted claims for reimbursement for services performed for Medicare/Medicaid patients in violation of the False Claims Act. Because it was impossible to identify precisely which claims were fraudulent, the district court held defendants liable only for claims submitted on days they billed for more than twenty-four hours of work, and then only for those patient sessions that exceeded the twenty-fourth hour. Following an appeal to this court, we remanded to the district court to consider additional evidence from the Government and to recalculate the number of false claims based on a new definition of "claim." Finding the district court's actions on remand inconsistent with our mandate, we again remand for further proceedings.

I

Dr. George Krizek practiced psychiatry in Washington, D.C. His wife Blanka functioned as his secretary and was responsible for his billing. In 1993, the Government filed a civil complaint alleging that for six years the Krizeks had submitted claims for reimbursement for services provided to Medicare/Medicaid patients in violation of the False Claims Act, 31 U.S.C. §§ 3729–31. After a three-week bench trial, the district court found that the Krizeks had submitted claims for reimbursement "when Dr. Krizek could not have spent the requisite time providing services...." *United States v. Krizek*, 859 F.Supp. 5, 12 (D.D.C.1994). Ruling that the Krizeks would be "presumed liable" under the False Claims Act for all claims they submitted in excess of nine hours per day, the district court referred the case to a Special Master to determine

the number of false claims in excess of the nine-hour benchmark and to calculate the precise amount of the Krizeks' liability.

In the proceedings before the Special Master, the Government introduced into evidence all "HCFA 1500" forms that the Krizeks had submitted to the Government for reimbursement. HCFA 1500 forms serve as invoices for billing Medicare and Medicaid: they must contain the doctor's name, the patient's name, the dates services were provided, and a five-digit code identifying each service provided to a particular patient, called a "CPT code." For example, CPT code 90844, which Dr. Krizek used frequently, indicates an individual psychotherapy session lasting approximately forty-five to fifty minutes. While a single HCFA form includes services for only one patient, it may include services rendered to that patient on multiple days.

HCFA 1500 forms contain only the CPT codes that Dr. Krizek billed, not the actual time he spent with each patient. As a result, the Special Master had to fashion a methodology to convert the codes into time periods in order to determine the number of hours the doctor actually billed each day. Because of the large number of claims (some days Dr. Krizek saw upwards of fifty patients), changing the assumptions of how much time each code represented would materially affect the total time billed for the entire day. Largely accepting the Government's proposed methodology for translating CPT codes into time periods, the Special Master attributed to each code the amount of time at the low end of its stated range (unless the doctor had indicated a different time period on the form). For the frequently used CPT code 90844, for example, the Special Master assumed a forty-five-minute session, the low end of the forty-five to fifty-minute range. For CPT code 90843, another frequently used code, this one having a twenty to thirty-minute range, the Special Master assumed twenty minutes. Using this methodology and determining that each CPT code rep-

resented a "claim" under the False Claims Act, the Special Master identified 264 days on which the Krizeks billed for more than nine hours, amounting to 1,149 false claims. Multiplying by $5,000, the minimum fine per claim under the False Claims Act, the Special Master calculated a total fine of $5.7 million.

The district court accepted the Special Master's findings of fact. *United States v. Krizek*, 909 F.Supp. 32, 33 (D.D.C.1995) ("*Krizek II*"). Seemingly moved by the enormity of the $5.7 million fine, however, the district court abandoned the nine-hour presumption, ruling instead that defendants could only be liable under the False Claims Act for claims submitted on days on which they billed for more than twenty-four hours of work, and then only for those patient sessions exceeding the twenty-fourth hour. *Id.* at 34. Applying this new benchmark, the Special Master identified three days on which the Krizeks billed more than twenty-four hours; on those days, he found a total of eleven false claims. The district court, assessing the $10,000 maximum fine under the False Claims Act for each violation, entered judgment against the Krizeks for $110,000, plus unjust enrichment damages of $47,-100. *Id.* Both parties appealed.

In *United States v. Krizek*, 111 F.3d 934 (D.C.Cir.1997) ("*Krizek III*"), this court affirmed the Krizeks' liability under the False Claims Act but remanded for further proceedings with respect to the calculation of the number of violations and the penalties to be assessed. In so doing, *Krizek III* resolved two issues central to the current appeal. First, it held that "the District Court's use of a twenty-four hour presumption, having earlier announced its intent to use nine hours as the benchmark, prejudiced [the Government's] prosecution of the claim." *Id.* at 938. In this regard, the court noted that the Government, in reliance on the district court's nine-hour benchmark, had adopted conservative estimates regarding the time attributable to each CPT code and declined to pursue

discovery of Dr. Krizek's billings for non-Medicare/Medicaid patients. *Id.* Second, *Krizek III* rejected the conclusion of both the Special Master and the district court that each individual CPT code on a HCFA 1500 form represents a "claim" under the False Claims Act, holding instead that each HCFA 1500 form is a claim. *Id.* at 939–40. For example, if a particular HCFA 1500 form identifies five services performed by Dr. Krizek for a single patient on five separate days, the form could constitute at most one false claim.

On remand, the district court ordered the Krizeks to give the Government their records of private pay patients seen on the ten "worst" days—those days the Government identified as reflecting the Krizeks' most egregious billing practices. Citing the "meager fruit" to be expected from further discovery when the ten worst days plus the Government's fifteen next worst days (voluntarily provided by the Krizeks) yielded only two additional days on which the Krizeks had billed more than twenty-four hours, the district court rejected the Government's request for additional discovery. *United States v. Krizek*, 7 F.Supp.2d 56, 58 (D.D.C.1998) ("*Krizek IV*"). At the same time, the district court refused to find False Claims Act liability on the two additional twenty-four-hour days because "the Government cannot prove that the claims in excess of 24 hours were the ones billed to Medicare/Medicaid as opposed to those billed to non-Medicare/Medicaid private patients." *Id.* Turning to *Krizek III*'s definition of "claim," and reasoning that "[o]n the evidence submitted, the Government has failed to establish which of the claims, under the new definition, are the ones in excess of the 24 hour presumption," the district court found insufficient evidence in the record to establish more than one false claim per day. *Id.* at 59. The district court fined the Krizeks $30,000, $10,000 for each false claim.

## II

In this second appeal, again brought by both sides, the parties fundamentally mis-understand the limited scope of this court's remand in *Krizek III*. In their cross-appeal, for example, the Krizeks argue that *Krizek III*'s direction to the district court to consider additional evidence regarding the conservative time assumptions the Government adopted in reliance on the nine-hour benchmark "reopened the methodological issue," allowing them to challenge the factual underpinnings of the Special Master's calculations. Not so. *Krizek III*'s remand rested on its express finding that the switch from a nine-hour to a twenty-four-hour benchmark prejudiced the Government's prosecution of its case. *Krizek III* intended nothing more than to give the Government an opportunity to revisit its assumptions, not to reopen all aspects of the Special Master's methodology.

We will not consider the Krizeks' cross-appeal for a second, equally important reason. Although they insist that they "challenged the government's methodology at every conceivable step," they failed to do so at one critical juncture: their original appeal to this court. *See Hartman v. Duffey*, 88 F.3d 1232, 1236 (D.C.Cir.1996) ("We do not reach the merits of defendant's arguments on this issue because of the defendant's failure to pursue it in its prior appeal.").

Equally misconstruing *Krizek III*'s limited remand, the Government faults the district court for failing to reconsider the twenty-four hour benchmark. Nothing in *Krizek III* entitled the Government to challenge that benchmark on remand. *Krizek III* assumed the validity of the twenty-four-hour benchmark and remanded for the limited purpose of giving the Government an opportunity to revisit its assumptions. If this court had intended to require the district court to go beyond evaluating the Government's assumptions and to reconsider the twenty-four-hour benchmark, it would have done so directly, not as elliptically as the Government claims it did.

Although the twenty-four-hour benchmark is a closed matter in this litigation, we do think the Government has pointed out three respects in which the district court's actions are inconsistent with *Krizek III*'s mandate: the district court refused to consider the Government's evidence regarding the conservative assumptions it adopted in reliance on the nine-hour benchmark; it excluded time billed to Dr. Krizek's private pay patients from the calculation of twenty-four-hour days; and it applied an incorrect methodology to determine the number of false claims over the twenty-four-hour benchmark. With respect to the first two issues, *Krizek III* could not have been clearer: "The government argues that the District Court's use of a twenty-four hour presumption, having earlier announced its intent to use nine hours as the benchmark, prejudiced its prosecution of the claim. We agree and remand for further proceedings." *Krizek III*, 111 F.3d at 938. To flesh out the nature of that prejudice, *Krizek III* directed the district court to (1) focus on the conservative assumptions the Government offered to determine how much time to allocate to each CPT code and (2) allow discovery of records of time billed to Dr. Krizek's private pay patients. *Id.*

■ Referring to the first of these tasks, *Krizek III* characterized the Government's time estimates as conservative, concluding that: "Considering the large number of claims submitted on any given day these assumptions may have had a material effect on the damages proved up by the government. However, because the damages were likely to be substantial already [using a nine-hour benchmark], the government chose not to proffer less generous approximations." *Id.* Notwithstanding *Krizek III*'s clarity, the district court flatly refused to listen to the Government's arguments about its conservative assumptions, let alone to allow the Government to introduce additional evidence. When Government counsel raised the issue at a September 5 Status Call, the district

court said: "You're dead on that issue. There is no—you're not going to now say, okay, it's 30 [minutes]. No, no. The Court of Appeals didn't say that. The Court of Appeals ... indicated they accepted that." In response, Government counsel quoted the passages from *Krizek III* discussed above. "You've misread that," replied the district court.

> Don't mislead this Court, Mr. Hegyi....
> You're misleading the Court now.
> That's not what it says.... All it says
> is that you were generous, and it doesn't
> say that I now go back and have to let
> you be less generous.... Look, Mr.
> Hegyi, I'm not going to argue with you
> any more. So let's go on. No, you're
> not going to continue with that because
> the Court of Appeals affirmed the Special Master and I'm not going to undo
> that work.

■ Instead of defending the district court's actions with respect to the Government's conservative assumptions, the Krizeks argue that the Government failed to preserve the issue for appellate review. The record demonstrates to the contrary. Not only did the Government twice bring the issue to the attention of the district court during the September 5 Status Call, but it reiterated its claim in written submissions to the district court: "The United States is aware that at the September 5, 1997 status conference the Court indicated it would not permit such a re-calculation. However, the United States includes this proposal out of an abundance of caution to prevent a possible future claim of waiver or abandonment by the Government." Given the district court's refusal to discuss the assumptions and particularly given its accusation that Government counsel was trying to mislead the court, we have no idea what more the Krizeks think the Government should have done (short of risking contempt) to preserve the issue for appeal.

To avoid any confusion about the scope of our remand from this appeal, we state our instructions with specificity. The district court must first allow the Government

to submit additional evidence regarding its conservative assumptions. It should then consider whether the Government's evidence requires any change in the Special Master's calculation of the number of hours billed each day. Nothing in this remand "reopens" the methodological issues raised by the Krizeks in their cross-appeal. The Krizeks may respond to the Government's claim that its assumptions were too conservative in light of the twenty-four-hour benchmark, nothing more.

■ *Krizek III*'s direction to the district court regarding the handling of private pay patients breaks down into two issues: discovery regarding the Krizeks' billing of private pay patients and incorporation of private pay patients into the calculation of the number of hours billed each day. Beginning with the first issue, we disagree with the Government that the district court improperly restricted its discovery. Since the private pay records for the twenty-five worst days yielded only two additional twenty-four-hour days, the district court's conclusion that further discovery would not likely have identified any more was hardly an abuse of discretion. *See Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C.Cir.1997) ("[A] district court's decision to permit or deny discovery is reviewable only for an abuse of discretion.").

■ We do agree with the Government, however, that the district court's refusal to include time billed to private pay patients in the calculation of the number of hours the Krizeks billed per day was inconsistent with the *Krizek III* mandate. *Krizek III* stated: "Presumably, if the government had introduced evidence on [private pay] patients it could have established that the Krizeks billed in excess of twenty-four hours on more days than indicated by Medicare and Medicaid records alone." 111 F.3d at 938. Clearly implicit in this statement is the proposition that private pay patients be included in calculating twenty-four-hour days. Why else would

*Krizek III* have ordered such discovery? Yet the district court refused to include private pay patients, explaining, "the Government cannot prove that the claims in excess of 24 hours were the ones billed to Medicare/Medicaid as opposed to those billed to non-Medicare/Medicaid private patients." *Krizek IV*, 7 F.Supp.2d at 58. "The mere assumption that all hours exceeding the 24 hour benchmark were hours billed to Medicare/Medicaid," the district court said, "is insufficient to prove knowing or reckless conduct." *Id.* at 59.

In refusing to include private pay patients as required by *Krizek III*, the district court imposed on the Government a burden not required by the False Claims Act. The Government does not have to *"prove* that the claims in excess of 24 hours were the ones billed to Medicare/Medicaid." The False Claims Act requires only that the Government prove that the Krizeks acted "in reckless disregard of the truth or falsity of the information" they submitted to the Government, and that it do so not beyond a reasonable doubt, but "by a preponderance of the evidence." 31 U.S.C. §§ 3729(b)(3), 3731(c). Yet under the district court's reasoning, it would be virtually impossible for the Government to establish liability on any twenty-four-hour day that included private pay patients.

Particularly in view of the district court's exceptionally conservative twenty-four-hour benchmark—*i.e.,* the Krizeks could be found liable only on days they billed for more than twenty-four hours of work, a physical impossibility—we think the False Claims Act preponderance standard is easily satisfied when any patient is seen beyond the twenty-fourth hour. Reinforcing this conclusion, an affidavit by a Government Special Agent lists several reasons for suspecting that the false claims were most likely the Medicare/Medicaid claims, including that many Medicare/Medicaid patients were being treated for severe psychiatric disorders and likely lacked the ability to monitor bills submit-

ted on their behalf, that the private pay patients had an "active self-interest" in ensuring that the Krizeks billed them properly, and that the Krizeks had a greater incentive to keep (and therefore not defraud) their more lucrative private pay patients.

In sum, *Krizek III*'s inclusion of private pay patients has two implications for the calculation of the number of false claims, implications the district court must account for on remand. First, it adds two more twenty-four-hour days, bringing the total to five. Second, it increases the number of false claims on the three original twenty-four-hour days.

 This brings us to the final respect in which the district court's actions were inconsistent with *Krizek III*. *Krizek III* required the district court to recalculate the number of false claims submitted by the Krizeks in light of the court's redefinition of "claim" as the HCFA 1500 form itself, not the individual CPT codes on the forms. 111 F.3d at 940. Although determining the number of false claims requires nothing more than calculating how many forms actually contained fraudulent entries, the district court simply concluded that three twenty-four-hour days equals three false claims. The district court explained:

> On the evidence submitted, the Government has failed to establish which of the claims, under the new definition, are the ones in excess of the 24 hour presumption. The evidence merely establishes that on the 3 days in question, the Defendants billed in excess of 24 hours to Medicare/Medicaid. Based on this record, the Court can only conclude that on each of the 3 days, there was at least one false claim under the definition established by the Court of Appeals.... While there certainly could have been more than one form with a false statement submitted on each given day, there is insufficient proof in the record.

*Krizek IV,* 7 F.Supp.2d at 59.

Again, we think the district court heightened the Government's burden of proof

beyond the False Claims Act's preponderance standard. The Government need not prove which particular patient sessions occurred after the twenty-fourth hour. Indeed, both parties agree that that would be an impossible task because records indicating the time of day Dr. Krizek saw particular patients do not exist. Even defense counsel seems to agree that the district court's rationale for finding only three false claims is flawed, conceding at oral argument that the proper method of determining the number of false claims is to count the number of patient sessions after the twenty-fourth hour and then to eliminate any overlap among those sessions, *i.e.,* instances in which the Krizeks billed on a single HCFA form more than one patient session occurring after the twenty-fourth hour.

To accomplish this simple task, the parties in the district court need do nothing more than utilize the methodology for calculating the number of false claims developed by the Special Master. The Special Master's methodology was employed by the district court in *Krizek II* and not appealed by the Krizeks. *Krizek III*'s new definition of "claim" merely adds an additional step—the elimination of overlap.

We need not describe the Special Master's methodology here; his procedures and assumptions are fully explained in the record. Suffice it to say that his methodology, based on assumptions favorable to the Krizeks, identified which particular patient sessions occurred after the twenty-fourth hour and produced a total of eleven such sessions on the three original twenty-four-hour days. To calculate the number of false claims, all the district court needed to do on remand from *Krizek III*—and all it needs to do now—is eliminate any overlap among patient sessions occurring after the twenty-fourth hour that are billed on the same HCFA form. For example, if Dr. Krizek saw patient X after the twenty-fourth hour on two of the twenty-four-hour days, and billed both days on the same

HCFA 1500 form, only one false claim occurred, not two.

Not surprisingly, the parties do not even agree about this simple mathematical calculation. Citing an affidavit by its Special Agent, the Government claims that there is no overlap among the eleven false claims found by the district court in *Krizek II.* Counsel for the Krizeks, who conceded at oral argument that the district court's reasoning was flawed, nonetheless claims that eliminating the overlap would yield the same result as the district court reached in *Krizek IV*—only three false claims. To support this proposition, counsel directed us to a chart in the record before the district court. As we read that chart, however, it speaks not to the overlap among the three twenty-four-hour days the district court originally identified, but to overlap among one of those three days and the two twenty-four-hour days the Government discovered when accounting for private pay patients. The chart, moreover, fails to employ the Special Master's methodology for identifying which particular patient sessions occurred after the twenty-fourth hour.

The district court's task on remand is simple and mathematical. To determine the number of false claims, it must (1) use the Special Master's methodology to count the number of patient sessions that occurred after the twenty-fourth hour on the five twenty-four-hour days (the three original twenty-four-hour days plus the two additional twenty-four-hour days discovered on remand from *Krizek III*) and then (2) eliminate any overlap among those sessions.

### III

This prosecution of a single doctor has now spanned over six years. It has consumed three weeks of trial, several days of hearings before the Special Master and the district court, two fully briefed, fully argued appeals, and five published opinions (three by the district court and two by this court). The five days on which the false claims were made occurred over

twelve years ago. According to defense counsel, Dr. Krizek no longer practices medicine and is dying of cancer.

It is time for the parties to stop refighting battles long-ago lost and for the district court to bring this prosecution to an expeditious close. To facilitate that goal, we repeat our instructions. (1) The district court must permit the Government to introduce evidence regarding its conservative assumptions and then consider whether to change any of the Special Master's assumptions in light of this evidence. (2) The district court must include private pay patients in its recalculation of the number of hours the Krizeks billed on each of the five twenty-four-hour days. (3) Then, using the methodology adopted by the Special Master, the district court must determine the number of false claims by recalculating the number of patient sessions after the twenty-fourth hour on each of the five twenty-four-hour days and eliminating any overlap. We fully expect that these simple steps will bring this prosecution to a long-deserved end.

The clerk is directed to issue the mandate forthwith.

*So ordered.*