314 F.3d 995
 UNITED STATES of America, Plaintiff, and
Alfred Aflatooni, Dr., ex rel, Plaintiff-Appellant,
v.
KITSAP PHYSICIANS SERVICE, a non-profit Washington corporation; Northwest Diagnostic Imaging, Inc., a Washington professional services corporation; PATHOLOGY Associates of Kitsap County, a Washington Partnership; Ronald Reimer, M.D.; Susan L. Reimer, his wife; Paul S. McCullough, M.D.; Jane Doe McCullough, his wife; Robert C. Schneidler; Sharon K. Schneidler, his wife; Nancy L. Koch; Richard L. Koch, her husband; Keith Hallman, M.D.; Kathleen A. Hallman, his wife; John P. Matan, M.D.; Susan J. Matan, his wife; Thomas C. Case, M.D.; Mary Ann Case, his wife; Milton S. Michaelis, M.D.; Jane Doe Michaelis, his wife; John Doe 1-200; Jane Doe 1-200; Sander E. Bergman, M.D.; Sandra Bergman, his wife, Defendants-Appellees.
 No. 01-36089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 10, 2002.
 Filed December 16, 2002.
 
 Cleveland Stockmeyer, Talmadge & Stockmeyer, Tukwila, WA, for the plaintiff-appellant.
 Robert G. Homchick, Davis Wright Tremaine LLP, Seattle, WA, for defendants Kitsap Physicians Service and Case.
 Steven Y. Koh, Perkins Coie LLP, Seattle, WA, for defendants Estate of Dr. John P. Matan & Susan J. Matan.
 David B. Robbins, Bennett Bigelow & Leedom P.S., Seattle, WA, for defendants Pathology Associates of Kitsap County and Hallman.
 Appeal from the United States District Court for the Western District of Washington, J. Kelley Arnold, Magistrate Judge, Presiding. VD.C. No. C-96-05003-JKA.
 Before: BROWNING, FISHER, and TALLMAN, Circuit Judges.
 OPINION
 TALLMAN, Circuit Judge:
 
 
 1
 It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim. Yet, the plaintiff-appellant in this case filed his action, proceeded to summary judgment, and prosecuted this appeal without ever seeing or presenting to a court a single false claim submitted by the defendants-appellees. This flaw is fatal to a qui tam[1] action under the False Claims Act.
 
 
 2
 Dr. Alfred Aflatooni appeals the summary judgment dismissal of his False Claims Act lawsuit brought against two physician groups and three doctors. The district court dismissed Aflatooni's action because he failed to produce a single false claim submitted by the defendants. Aflatooni contends that (1) the district court should have given him more time pursuant to Federal Rule of Civil Procedure 56(f) to gather evidence because the defendants engaged in spoliation of the allegedly false documents and (2) the district court erred in entering summary judgment because Aflatooni demonstrated by implication that the defendants must have submitted false medical bills to the government.
 
 
 3
 The district court did not err by refusing to grant more time under Rule 56(f) where Aflatooni failed to make a Rule 56(f) motion before the summary judgment hearing, as the Rule requires. See Ashton-Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir.1990).
 
 
 4
 The district court also properly granted summary judgment on the merits. To proceed to trial Aflatooni was required — not surprisingly — to present evidence of actual false claims made by the defendants. Because Aflatooni did not point to a single, specific false claim or a sufficiently detailed description of one, he failed to create a triable issue of fact.
 
 
 5
 We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's summary judgment against Aflatooni.
 
 
 6
 * Dr. Aflatooni initiated this action in January 1996, acting as a qui tam relator under the federal False Claims Act, 31 U.S.C. §§ 3729-3733. Aflatooni named multiple defendants, including the appellees in this case: Kitsap Physicians Service ("Kitsap"), Pathology Associates of Kitsap County ("PAKC"), Dr. Hallman, Dr. Case, and Dr. Matan. In addition, Aflatooni named Northwest Diagnostic Imaging as a defendant. The government later chose not to intervene.[2]
 
 
 7
 Aflatooni alleged that more than ten years earlier, from 1985 through 1987, the defendants submitted false bills to Medicare for medical services provided by defendants. In February 1997, the defendants moved for dismissal due to lack of subject matter jurisdiction. The defendants argued that because any fraud alleged was public knowledge, Aflatooni could not proceed with his qui tam action. The district court dismissed Aflatooni's case on this ground. We reversed the district court as to all the defendants except Northwest Diagnostic Imaging. United States ex rel. Aflatooni v. Kitsap Physicians Services, et al., 163 F.3d 516 (9th Cir.1999). We held that only the allegations as to Northwest Diagnostic Imaging had been publicly disclosed. The case was remanded.
 
 
 8
 The parties conducted sporadic discovery until the defendants moved for summary judgment on September 6, 2001. The defendants based their motion on (1) Aflatooni's failure to produce evidence of a single false claim and (2) his failure to bring the action within the statute of limitation. The district court heard oral argument on October 17, 2001.
 
 
 9
 Dr. Aflatooni presented the trial court with limited evidence relating to his claims. He relied almost entirely on a letter from Dr. John P. Matan (now deceased), dated April 8, 1987, and later statements made by the recipient of the letter, Robert Wilson, president of Kitsap. The letter stated in its entirety:
 
 
 10
 On 4/4/87, I became aware that many of my anatomic pathology billings through [PAKC] have been altered without my knowledge or consent. This was performed by my partner, Dr. Hallman, and has apparently gone on since the inception of [PAKC].
 
 
 11
 This notice is not to be construed in any way as alleging fraud or any other [illegal] activity by Dr. Hallman nor is it meant to imply a loss to the carrier. This notice is meant to disclaim any knowledge or consent of any possible illegal or unethical activities resulting from this action and to state that the billings for this period under my name do not reflect my personal fee profile or the actual work performed in many instances.
 
 
 12
 In response to this letter, Kitsap engaged attorney John Guadnola to conduct an internal investigation. Guadnola testified on deposition that his investigation was free from influence by Kitsap and individual doctors, and Guadnola selected without interference nearly 1,000 medical records to review for improper billing. Guadnola concluded that "there was no fraud," that all adjustments to bills were appropriate, and that the general trend of any adjustments was to reduce the amount claimed in the bill. For example, Guadnola found that of the 523 November 1985 bills he reviewed, there were only two occasions in which the bill upwardly adjusted the number of slides reviewed by a pathologist and there were at least fifty downward adjustments.
 
 
 13
 Aflatooni argues on appeal that the entire Guadnola investigation was a sham, based on a 1997 declaration of a healthcare administrator, an expert whom Aflatooni engaged to assess the propriety of the investigation. However, because Aflatooni failed to present this evidence to the district court in opposition to the motion for summary judgment, either in his written briefs and affidavits or at the summary judgment hearing, he has waived this argument on appeal. See, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir.2001) (a "district court is not required to comb the record to find some reason to deny a motion for summary judgment") (quotation omitted); Peterson v. Highland Music, Inc., 140 F.3d 1313, 1321 (9th Cir.1998) ("We apply a `general rule' against entertaining arguments on appeal that were not presented or developed before the district court.").
 
 
 14
 Aflatooni did present to the district court a memo written by Wilson after receiving Matan's April 1987 letter. Wilson met with Matan at that time, and Matan indicated to Wilson that PAKC submitted about 10,000 bills a year, any of which could have been altered without Matan's knowledge. Aflatooni also claimed that Wilson later personally told him that about a quarter of the 10,000 bills a year may have been altered to receive more compensation.
 
 
 15
 Dr. Keith Hallman, the physician who allegedly altered Matan's bills to defraud Medicare, testified on deposition that Hallman reviewed Matan's bills in accordance with Hallman's role as managing partner and exercised his reasonable professional judgment to sometimes adjust Matan's bills. Hallman also swore that "I have never knowingly billed for services that were not provided or inaccurately identified services to be billed."
 
 
 16
 Aflatooni also contends on appeal that he presented sufficient evidence of fraud committed by Northwest Diagnostic Imaging, the party that was dismissed from the case in 1997 on jurisdictional grounds. Aflatooni alleged that Northwest Diagnostic Imaging was forced to pay a penalty of around $150,000 for overcharging Medicare. Northwest Diagnostic Imaging was controlled by Kitsap, which also controls PAKC. Aflatooni argues on appeal that he has therefore established a pattern of fraud by Kitsap that also extends to PAKC. Aflatooni's urging of this evidence for the first time on appeal cannot create a triable issue of fact because he failed to articulate this evidence to the district court in opposition to the summary judgment motion. See Carmen, 237 F.3d at 1029; Peterson, 140 F.3d at 1321.
 
 
 17
 At the October 17, 2001, summary judgment hearing, Aflatooni raised the issue of evidence spoliation and requested that an evidentiary hearing be conducted on that issue. At no point did Aflatooni make a Rule 56(f) motion, orally or in writing, or file a supporting affidavit explaining why additional time for discovery was needed to respond to the summary judgment motion.
 
 
 18
 The district court granted defendants' motion and dismissed Aflatooni's case. The court found that Aflatooni presented "no evidence to support the claim that defendants filed a single claim in violation of the False Claims Act." The district court rejected defendants' argument that Aflatooni's claims were barred by the statute of limitation. The court also rejected Aflatooni's suggestion for an evidentiary hearing to examine his claims of spoliation, stating that "Defendants have offered credible reasons for the destruction of the records, i.e. the retention policy in accordance with both State and Federal Regulations, and storage accommodation." The court also rejected Aflatooni's spoliation claims because "[t]he trial date was scheduled at a date beyond that requested by [Aflatooni]. [Aflatooni's] failure to seek the documents basic to his 15 year old claims (or suspicions) and his 6 year old lawsuit cannot be blamed on the defendants."
 
 
 19
 Aflatooni then brought a motion for reconsideration of the trial court's summary judgment dismissal. The motion alternatively sought a stay of judgment or relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). The motion never argued that summary judgment was improper because Aflatooni needed more time for discovery pursuant to Rule 56(f). That motion was denied.
 
 
 20
 Aflatooni filed a timely notice of appeal on November 21, 2001.
 
 II
 
 21
 Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence. Aflatooni argues that the district court erred in not granting him a continuance under this provision.
 
 
 22
 The district court's decision not to allow further discovery pursuant to Rule 56(f) is reviewed for an abuse of discretion. U.S. Cellular Inv. Co. of Los Angeles v. GTE Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir.2002). "District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion." California ex rel. California Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir.1998) (internal quotation and citations omitted).
 
 
 23
 A Rule 56(f) motion must be brought before the summary judgment hearing. Ashton-Tate Corp., 916 F.2d at 520. The facts supporting a Rule 56(f) motion must be set forth in an accompanying affidavit. Campbell, 138 F.3d at 779. Failure to comply with these requirements is a proper ground for denying relief. Id.; see also Weinberg v. Whatcom County, 241 F.3d 746, 751 (9th Cir.2001).
 
 
 24
 Aflatooni never made a Rule 56(f) motion, much less before the district court issued its summary judgment ruling. On that basis alone, Aflatooni's argument fails. To the extent that Aflatooni made any requests for additional discovery, they were made after summary judgment was issued and in the form of a motion seeking relief under Rule 60(b). Without elaborating on the lengthy procedural history of the discovery permitted in this case, the record fully supports the district court's determination that the failure to comply with the Rule 56(f) requirements cannot be saved by any excusable neglect attributed to Aflatooni's prior trial counsel. The district court did not err by failing to grant Aflatooni additional discovery in response to defendants' motion for summary judgment.
 
 III
 
 25
 We review the district court's grant of summary judgment de novo. Balint v. Carson City, 180 F.3d 1047, 1050(9th Cir. 1999) (en banc). We must determine, while viewing the evidence in the light most favorable to the nonmoving party, whether there is a genuine issue of material fact. Id. We cannot weigh the evidence; we must only determine whether there is a genuine issue for trial. Id. at 1054.
 
 
 26
 To avoid adverse summary judgment on his qui tam action, Aflatooni at least must present material questions of fact as to each of the following elements: (1) defendants made a claim against the United States (2) that was false or fraudulent (3) with knowledge of the falsity or fraud. United States ex rel. Oliver v. The Parsons Co., 195 F.3d 457, 461(9th Cir. 1999). A failure to raise a triable issue of fact as to any of these three elements justifies the summary judgment dismissal of Aflatooni's claims. See Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1477-79 (9th Cir.1996) (affirming summary judgment in favor of defendants of False Claims Act suit and analyzing the "falsity" and "knowledge" elements independently); Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1420-21 (9th Cir.1992) (affirming summary judgment in favor of defendants in a False Claims Act suit solely because the plaintiff failed to establish a triable issue as to the "knowledge" element). As we said in Wang, "[t]o survive summary judgment, [the relator] must establish evidence on which a reasonable jury could find for the plaintiff." Id. at 1420 (emphasis in original).
 
 
 27
 * To determine if the district court erred in dismissing Aflatooni's action on summary judgment, we must first resolve whether Aflatooni posits a successful spoliation argument. Showing evidence of spoliation of the claim documents by the defendants would allow Aflatooni to argue to the jury adverse inferences of fraud that might be sufficient to defeat summary judgment. Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991).
 
 
 28
 But the district court held that there was no spoliation in this case, finding that "Defendants have offered credible reasons for the destruction of the records, i.e. the retention policy in accordance with both State and Federal Regulations, and storage accommodation." Aflatooni offered no evidence to rebut that explanation.
 
 
 29
 Defendants engage in spoliation of documents as a matter of law only if they had "some notice that the documents were potentially relevant" to the litigation before they were destroyed. Akiona, 938 F.2d at 161. Aflatooni argues that defendants improperly destroyed the 1985-87 billing records. The defendants respond that the documents were kept and destroyed in the normal course of business. Defense witnesses testified on deposition that the documents were routinely destroyed after keeping them for the six years required by state regulations. That is, the 1985-87 documents were destroyed in 1991-94. Aflatooni did not bring his lawsuit until January 1996. Therefore, Aflatooni's action could not have provided the notice required to establish a valid claim of spoliation.
 
 
 30
 Aflatooni also contends that the defendants were put on notice about potential litigation when they initiated the 1987 internal investigation. But the result of this investigation was an opinion from outside legal counsel that there were no bases for fraud. From the defendants' perspective, they were not on notice of potential litigation, much less a specific, future qui tam lawsuit.
 
 
 31
 Aflatooni's argument, if accepted by this Court, would result in a de facto rule that health care providers must keep documents in perpetuity where there was a single suggestion of possible billing changes that was entirely refuted by an external auditor engaged to conduct an internal investigation to confirm or deny improper billing activities. Such a result is not required to maintain the vitality of the False Claims Act and would be unfair as a matter of legal policy to health care providers who generate enormous quantities of records. Where an organization receives a clean bill of health as a result of such an investigation, and keeps the relevant records for the time period mandated by law, without additional evidence of wrongdoing that should have put management on notice that the investigation was inadequate, there is nothing to warrant a finding of spoliation. In this case, the district court correctly found that there was no spoliation.
 
 B
 
 32
 Without the adverse inference triggered by actual spoliation, Aflatooni's case depends upon very limited evidence.
 
 
 33
 Aflatooni must establish that a false claim was submitted to the government. It is not enough for Aflatooni "to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted." United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1311 (11th Cir.2002). Instead, Aflatooni must show "an actual false claim for payment being made to the Government." Id. Evidence of an actual false claim is "the sine qua non of a False Claims Act violation." Id. See also Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785(4th Cir.1999) (stating that the "False Claims Act at least requires the presence of a claim — a call upon the government fisc — for liability to attach").
 
 
 34
 In addition to the holdings of our sister circuits above, legislative history supports requiring Aflatooni to come to court with a claim in hand or with sufficiently detailed circumstantial evidence to establish that the defendant actually submitted a false claim. The False Claims Act was enacted during the Civil War "to combat rampant fraud in Civil War defense contracts." S. Rep. 99-345, 1986 U.S.C.C.A.N. 5266, 5273 (summary of legislative history offered in connection with substantial amendment of the Act in 1986). The government may recover under the False Claims Act regardless of whether it suffered damage — recovery is based "solely upon proof that false claims were made." Id. "[A] false claim may take many forms, the most common being a claim for goods or services not provided." Id. at 5724. The False Claims Act, then, focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme. See United States v. Rivera, 55 F.3d 703, 709 (1st Cir.1995) (False Claims Act "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the `claim for payment'").
 
 
 35
 In short, it is the claim itself that is central to Aflatooni's action. Aflatooni offers no such claim. In opposition to the summary judgment motion, Aflatooni only offered the April 1987 letter from Matan to Wilson, some notes made by Wilson, Wilson's deposition testimony, and Aflatooni's recollection of statements made to him by Wilson. But these documents do not describe even one, specific false claim. At most, the April 1987 letter suggests that Matan's bills were altered in some fashion by his partner. But the letter fails to show that Matan's bills were upcoded, made false, or ever submitted to Medicare. Wilson's notes indicate that Matan's office submitted approximately 10,000 bills each year and that any of these bills could have been altered without Matan's knowledge. Wilson's notes also indicate that Dr. Hallman was "greedy," implying an improper motive behind the alterations. These generalized, speculative suppositions fail to detail any particular false claim or even to provide sufficiently detailed circumstantial evidence of such a claim. For the same reasons, Aflatooni's statement that Wilson once told him that a quarter of Matan's bills were altered is not enough to defeat summary judgment.
 
 
 36
 In sum, Aflatooni's evidence totally fails to describe in any detail any actual false claims. Aflatooni paints with far too broad a brush. In a qui tam action under the False Claims Act, proving that the government has been defrauded requires much more than the evidence proffered by Aflatooni. It requires a real false claim, either in the form of the false claim itself or evidence sufficient to identify such a claim.
 
 
 37
 Aflatooni argues that he has produced the required evidence, implying a false claim by offering evidence that he was told by Wilson that a quarter of some 30,000 bills submitted to Medicare were altered. Aflatooni's argument rests upon cases that allow parties, who can point to specific examples of false claims, to estimate total damages by extrapolation based on proof that a defendant engaged in systematic fraud.
 
 
 38
 Aflatooni relies mostly on United States v. Krizek, 192 F.3d 1024 (D.C.Cir.1999), in making this argument. Krizek, however, provides him no shelter. The court in Krizek presumed that the defendants would be liable under the False Claims Act for submitting psychiatric bills that totaled more than twenty four hours for a given day. Id. at 1026-27. The government had the Medicare/Medicaid claims in hand in Krizek but could not prove which claims put the defendants over the twenty-fourth hour. Id. at 1027-28. Quite unlike the government in Krizek, Aflatooni cannot bring forth even a single false claim from the alleged three-year period of fraud. His failure to produce evidence establishing submission of a single false claim is fatal to his action.
 
 IV
 
 39
 The district court's summary judgment dismissal of Aflatooni's action is AFFIRMED.[3]
 
 
 
 Notes:
 
 
 [1]
 "Qui tam" is shorthand for the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means `who pursues this action on our Lord the King's behalf as well as his own.'" Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 768 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In practice, the phrase means "an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Garner, A Dictionary of Modern Legal Usage at 728 (2d ed. 1995). Practitioners and courts refer to them by the abbreviated title "qui tam." Qui tam actions under the False Claims Act are authorized by 31 U.S.C. § 3730(b)(1).
 
 
 [2]
 Under the False Claims Act, the Attorney General is served with a copy of the relator's complaint at the time that it is filed under sea] with the district court. The United States Departmentof Justice is then given sixty days to evaluate the merits of the complaint and decide whether it will intervene and take over the prosecution of the civil action. 31 U.S.C. § 3730(b)(2). In this case, Aflatooni's counsel informed us at oral argument that the government had elected not to intervene. When that occurs, the relator must unseal the complaint and serve the putative defendants. The case then proceeds as any other civil action in federal court.
 
 
 [3]
 Defendants filed a joint motion in this Court for fees and costs associated with this appeal. Federal Rule of Appellate Procedure 38 allows defendants to recover their appeal costs if Aflatooni's appeal is "frivolous." An appeal is frivolous if it is "wholly without merit."Amwest Mortgage Corp. v. Grady, 925 F.2d 1162, 1165 (9th Cir.1991). We cannot say that Aflatooni's claims meet this standard, and defendants' motion is accordingly denied. Each party shall bear its own costs and fees in this appeal.