Stephen B. **CANTRELL**, D.D.S., M.D., **Bringing this Action on Behalf of the United States Government, Plaintiff,**

v.

**NEW YORK UNIVERSITY,**
**et al. Defendants.**

**No. 00 Civ. 8209(PKC).**

United States District Court,
S.D. New York.

June 16, 2004.

David B. Golomb, Law Offices of David B. Golomb, New York City, for Plaintiff.

Gary Paul Schulz, Nixon, Peabody, L.L.P., Garden City, NY, for Defendants.

Michael M. Krauss, Mary Jo White, United States Attorney, S.D.N.Y., New York City, for Movant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

This is a *qui tam* action brought under the False Claim Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, against defendant New York University ("NYU") alleging that in connection with clinical trials conducted by its School of Medicine and Hospitals Center, NYU fraudulently billed Medicare. The clinical trials were designed to test the efficacy of vaccines for malignant melanoma.

The complaint alleges that billing Medicare for a patient visit under Current Procedural Terminology ("CPT") code 99215 is appropriate for an extended visit of 40–60 minutes involving two or more of the following: a comprehensive history, a comprehensive physical examination or medical decision making of high complexity. The plaintiff-relator alleges that the defendant improperly coded simple visits of 5–10 minutes to administer the vaccine under CPT 99215. Each line item on each invoice reflecting an "upcoding" is alleged to constitute a separate false claim under the FCA, subjecting the defendant, *inter alia*, to civil penalties of $5,000 to $10,000 for each claim, 31 U.S.C. § 3729(a).

■ At a pretrial conference held on May 12, 2004, I advised the parties of my ruling *in limine* that each invoice, rather than each line item on an invoice, could support a false claim. This is in accord

with the statute's definition of a "claim" as "any request or demand ... for money or property", 31 U.S.C. § 3729(c). One invoice constitutes one false claim, even though it contains numerous individual entries, and a false claim is made when the invoice is presented for payment. In so holding, I have adopted the reasoning of the D.C. Circuit in *United States v. Krizek,* 111 F.3d 934, 938–40 (D.C.Cir.1997), a case that concluded that each invoice, not each line item on an invoice, constituted a request or demand for payment.

The parties have jointly requested that the Court rule *in limine* on an additional issue that may control the damage presentation in this case. Specifically, the plaintiff-relator asserts that the defendant received "program income" from the vaccine trial, including payments by the patients' insurers, that should have been reported to the federal grant sponsors but was not. An underreporting of monies owed to the government is expressly reached by 31 U.S.C. § 3628(a)(7), and is often referred to as a "reverse false claim" C.M. Sylvia, *The False Claims Act: Fraud Against the Government* §§ 4.35, 4.8 (West Database Updated February 2004).

Plaintiff-relator argued in the last conference before me that each receipt of an item of "program income" resulted in a separate false claim. Defendant urged that periodic reporting required disclosure of "program income" and that receipt of an item of income did not trigger a new reporting obligation.

■■ The term "program income" as defined in the regulations "includes, but is not limited to, income from fees for services performed...." 45 C.F.R. § 74.2. The obligation to report program income appears to flow from the provision for filing financial status reports. The regulations layout a regime for financial reporting, including the form to be used "if in-come has been earned" and the timing of filing, 45 CFR § 74.52(a)(1)(i), (iii). From this I conclude that each separate financial report that defendant submitted to the government that failed to report "income from fees for services performed" may support an FCA claim. Such reports may include the grant application, itself, and any amendment thereto or any progress report, to the extent that they required disclosure of reimbursement from third parties. It will be plaintiff's burden to show that the specific filing required disclosure of actual or anticipated program income and that defendant failed to report that income; in the case of anticipated income, it is part of plaintiff's burden to prove that the income was anticipated and not merely that it was subsequently received.

■ Plaintiff-relator has offered another interpretation that he argues supports the theory that each claim to a third-party insurer constitutes a separate false claim. He asserts that because the vaccine clinical trials were federally-funded, each time a patient's private insurer was billed in connection with the trials, it was a claim subject to the FCA. Putting aside the non-FCA questions of whether defendant owed the medical insurer a duty of disclosure of the federal funding or whether billings to the insurer also suffered from improper upcoding, the plaintiff-relator has failed to demonstrate, at this juncture, that the invoices to the private health insurers are cognizable as false claims under the FCA. The plaintiff-relator makes no claim that any of these private insurers are provided with government funds or are reimbursed by the government. No case law authority has been cited to support the argument that a false claim submitted to a private party who neither receives nor expects to receive government funds can support an FCA claim. Reliance upon the statutory

language does not support the theory. *See Harrison v. Westinghouse Savannah River Company,* 176 F.3d 776, 788 (4th Cir. 1999) (finding that the "test for False Claims liability . . . . is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.,* that involved a 'claim')").

The full statutory definition of a "claim" is as follows:

> For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c). Plaintiff-relator argues that because the government has or will reimburse defendant for that which is the subject of the request for payment from the insurer, the request for payment to the insurer is a "claim". I read the statute as meaning that if a demand for payment is "made to . . . a recipient [of government funding]" and the federal government "provides any portion of the money", then an FCA claim can be supported. Under the "will reimburse" portion, an FCA claim can be made based upon a submission made to a party to whom the government "provides" no funding but the party expects eventual reimbursement from the government. Here, it is the party who has or will receive government funding who has made the arguably false claim to a private insurer. I do not read the portions of the FCA cited by plaintiff-

relator to support an actionable FCA claim in that circumstance.

The theories that the plaintiff-relator advances are in a way self-contradictory. As noted, he is entitled to proceed on the theory that the defendant should have disclosed to the government program income received from private insurers. These private reimbursements could have influenced the decision to continue the government funding of the vaccine trials. But, under this rationale, it was in the government's interest that defendant pursue claims with these private parties in order to maximize program income. This is flatly inconsistent with a theory that it was an FCA fraud to have made a claim for reimbursement from a private insurer. The FCA fraud, if there was any, was in not truthfully disclosing the program income to the government, thereby permitting the government to reduce or eliminate funding of a program that it perceived to be worthwhile.

Ruling *in limine,* I adhere to my prior ruling that each invoice, not each line item on an invoice, may support a claim under FCA. To the extent that defendant was required to disclose actual or expected program income but did not do so, each grant application or amendment thereto, each progress report and each periodic financial report may potentially support a claim under FCA. Neither reimbursement to defendant by a private insurer nor requests by defendant for reimbursement made to a private insurer may support a claim under FCA.

SO ORDERED.